Chicago and Mississippi Railroad Co. v. Patchin.

THE CHICAGO AND MISSISSIPPI RAILROAD COMPANY, Appellants, v. DANIEL T. PATCHIN, Appellee.

APPEAL FROM MACOUPIN.

In the management of railroads, as to passengers and freights, the strictest diligence, skill and care will be exacted, and if these are wanting, the liability will be measured as for slight negligence; but the injured party must be free from such negligence as contributes to the injury complained of.

A party who permits his cattle to be upon the railroad track, is not blameless.

A case of negligence will not be made against a railroad company, by showing simply, the killing of stock upon the road by the agents or carriages of the company. It must be shown that there has been wanton, or willful or gross negligence on the part of the company, to create a liability.

Railroad companies have an absolute ownership in fee of the land on which their roads are built, for their purposes, and if cattle graze upon these lands, it must be as a favor, not as a right, and cattle will not be protected in trespassing upon them, except as against willful and malicious injuries.

Speed in the transit, and punctuality in the arrival and connections of railroad trains, is required, and is lawful.

THE declaration in this case averred that plaintiff on the 18th day of June, 1853, up to the institution of this suit, to wit: on the 1st day of September, 1854, at etc., was possessed and the owner of certain stock, to wit: one hog, June 12th, 1853; one hog, January, 1854; April 17th, 1854, one red cow; May 22nd, 1854, two hogs, and May 27th, 1854, three hogs; then and there being on a certain unenclosed highway, in said county, whereon the track of the said Chicago and Mississippi railroad is laid out, and used, and kept, etc., and that said company was possessed of certain steam carriages, locomotives, etc., running on said road, etc., by the servants of said company, etc.; yet so ignorantly, negligently, carelessly, etc., drove and guided the same, and for want of proper care and management, then and there struck, ran upon, mangled, cut and bruised the said seven hogs and one red cow, and killed the same. To this the defendants pleaded not guilty, with leave to give all special matter in evidence.

This cause was heard before WOODSON, Judge, and a jury, at a special term, in December, 1854, of the Macoupin Circuit Court. Verdict and judgment for the plaintiff for $77.50.

The court gave the following instructions to the jury, at the request of the plaintiff:

First. "That if the jury believe from the evidence in the case, that the servants or agents of the defendants, in running their trains of cars, saw, or in the exercise of reasonable care and diligence, might have seen, the stock of the plaintiff, and might, by resorting to the usual expedients of sounding the whistle, and slackening the speed of the trains, have prevented injury to the plaintiff's stock, and that the servants or agents of the defendants, were wanting in such care and diligence, and

did not resort to such expedients, and as a consequence that the stock of the plaintiff has been injured by the train or trains of the defendants while in motion, the jury will find a verdict for the plaintiff to the extent of the injury to his stock.

Second.   That there is no law that requires the Chicago and Mississippi railroad company to fence their road, nor is there any law which makes it incumbent on the owners of stock to prevent them from running at large.   If stock running at large should be found upon the railroad track, it is the duty of those having charge of the locomotives and trains, to use such care and means as may be in their power, by the proper management of their trains, to prevent accidents, and any such omission on the part of the agents and servants having the management of the trains, is negligence, and any injury resulting therefrom, will render the company liable for such damages as the injured party may sustain.   Whenever, however, a plaintiff charges negligence on the part of the agents or servants of the company, he must prove such negligence as charged in the declaration."

The court gave the following instructions at the instance of the railroad company:

" The presumptions of law are in favor of defendants, and the plaintiff cannot recover in this suit, unless upon proof of negligence in the servants of defendants."

" That the killing of the stock mentioned, is, of itself, no proof of negligence."

These, with the instructions copied into the opinion as asked for on the part of defendants, which were refused, were all the instructions presented in the case, on either side.

The substance of the evidence is given in the opinion of the Court.

J. M. PALMER, for Appellants.

D. A. SMITH, for Appellee.

SCATES, J.   In case for negligence, defendant recovered $77.50 for killing seven hogs and one cow.

The declaration charges that plaintiffs, by their servants " so negligently and unskillfully managed and controlled said trains and locomotives, and so ignorantly, negligently and carelessly drove, guided and governed the same, that said locomotives and trains of cars, for want of good and sufficient care and management thereof as aforesaid, then and there struck," etc.

At the instance of defendant, the court instructed: " That there is no law that requires the Chicago and Mississippi railroad company to fence their road, nor is there any law that

makes it incumbent on the owners of stock to prevent them from running at large.

"If stock running at large, should be found upon the railroad track, it is the duty of those having charge of the locomotives and trains, to use such care and means as may be in their power, by the proper management of their trains, to prevent accidents; and any such omission on the part of the agents and servants having the management of the trains, is negligence, and any injury resulting therefrom, will render the company liable for such damages as the injured party may sustain.

"Whenever, however, a plaintiff charges negligence on the part of the agents or servants of the company, he must prove such negligence as charged in the declaration."

The court also refused the following instructions asked by the plaintiffs:

First. "That if they believe from the evidence, that the stock of plaintiff were roaming at large, upon open, unenclosed land belonging to some other person than the plaintiff, at the time they were killed, the plaintiff cannot recover in this suit.

Second. "That if from the evidence, they believe that the cars of defendants, (plaintiffs here,) at the time of killing the stock, were running at the usual speed, upon the usual track, they are not liable for the stock killed.

Third. "That unless they believe from the evidence, that the stock sued for, were killed by the cars of defendants while on some crossing over the road of defendants, they will find a verdict for defendants."

The testimony clearly shows the killing, and that the stock was on the track, in a flat, open prairie, whence there was no lane or crossing. That defendant owned land and lived near the railroad, but did not own the tracts on either side of the road where the stock was killed. Nothing hindered the engineers from seeing the stock, and that no alarm was given by whistle, speed of train was not checked, nor does it appear that any attempt or effort was made to do so. Stock was killed at different times, by different trains, all in daytime. Witness thought the freight train that killed the cow, rather increased speed. Such is the case.

What, by law, are the rights and liabilities of the parties?

This must depend, on the part of the defendant, upon that degree of protection the law affords for his stock, while in a position of technical trespass, if any; and from what degree of negligence, if any, as well as willfulness.

There would be but little difficulty in charging the plaintiffs for willful injuries and gross negligence, if the parties to the record were alone interested and involved in the principle

governing the case, nor even if the safety and preservation of goods on freight alone were concerned. But when we take into account and consideration the irreparable damage to life from casualties to trains from running over stock, and that the imminency of hazard to passengers is increased in proportion to the protection given to the passive negligence of stock owners in knowingly permitting their stock to frequent, stand, graze and lie upon the track, the rule becomes much more difficult of adjustment. The court instructed, and very properly, in accordance with decisions of this court, that neither party was bound to fence his road or his stock, (*Alton and Sangamon R. R. Co.* v. *Baugh*, 14 Ill. 312 ; *Seeley* v. *Peters*, 5 Gilm. 138) ; and, in the latter case, that the common law in relation to enclosing and confining and restraining stock within such enclosures is inapplicable, and not in force in this State. Although made by a divided court, against a very learned and able dissenting opinion, we are not disposed to question its authority. The same modification of the common law had been recognized the year before, in Pennsylvania, in *Knight* v. *Abert* (6 Pa. State R. 472), and confirmed, in 1852, in *N. Y. and Erie R. R. Co.* v. *Skinner* (19 Pa. State R. 301.)

The defendant may, therefore, lawfully permit his stock to run upon the *range*, and browse on unenclosed woodlands, for which, at most, he is but a technical trespasser. What further rights may he claim of protection to them while in the enjoyment of this *quasi* permissive easement ; whether it extends to a grazing privilege of highways, but more especially to that class used as railways ? We may readily admit that there is a protection, incident to and accompanying it, against all willful and malicious mischief and injury.

The lowest degree of protection above these, is that which requires common care, skill or diligence, and charges a party only for gross negligence. Is the defendant, under the facts in this case, entitled to this degree of protection ? if so, is the instruction given proper, and do the proofs raise a liability under it ? The courts have laid down the rule as requiring plaintiffs " to use such care and means as may be in their power, by the proper management of their trains, to prevent accidents ;" and " any such omission is negligence, and any injury resulting therefrom will render the company liable for such damages as the injured party may sustain." The instruction is general, and does not define the *degree* of care required, nor the *degree* of negligence for which they are liable. It would as well apply to the strictest as to common or ordinary care, and to slight as to gross negligence. The rule laid down is true as a proposition or rule of law, but in its higher degrees of care and

negligence, and its plastic variableness of meaning, can have no just application to this case. The evidence clearly brings the case within so general, indefinite a rule; but it is much more questionable under the lowest degrees of care and negligence, especially in relation to some, if not all, of the hogs, for it does not appear that signals were not given or efforts used to prevent running over them, as was shown in relation to the cow.

The instructions asked by the plaintiffs here are equally involved in, and will be settled by, a proper rule defining the degree of care required and culpable negligence.

While the courts will, as to passengers and freights, apply the enforcement of the strictest diligence, skill and care, and, for want of them, measure the liability for slight negligence, yet the injured party must be free from such negligence as contributes to the injury complained of. *Galena and Chicago Union Railroad Co.* v. *Yarwood,* 15 Ill .475 ; *same* v. *Loomis,* 13 Ill. 551; *Aurora Branch Railroad Co.* v. *Grimes,* 13 Ill. 586, etc. ; *Knight* v. *Abert,* 6 Pa. State R. 172 ; *N. Y. and Erie Railroad Co.* v. *Skinner,* 19 ibid. 301; *Tonawanda Railroad Co.* v. *Munger,* 5 Denio, 264 ; *same case,* on second trial, 4 Comst. 357; *Clark* v. *Syracuse and Utica Railroad Co.* 11 Barb. 114; *Talmadge* v. *Rensselaer and Saratoga Railroad Co.,* 13 Barb. S. C. R. 496 ; *Marsh* v. *N. Y. and Erie Railroad Co.,* 14 Barb. S. C. R. 365.

These decisions concur in this, as a general rule, and are sustained by more than fifty decisions referred to in them, made upon a great variety of circumstances. An exception to the rule, allowed in *Lynch* v. *Nurdin,* 1 Adol. and Ell. 29, (41 Eng. C. L. R.), in favor of a plaintiff, a child of seven years old, who received an injury by getting into the defendant's cart while it was carelessly left in the street, was not sanctioned or allowed in principle in *Hartfield* v. *Roper,* 21 Wend. 615, and *Brown* v. *Maxwell,* 6 Hill, 592 ; and these are cited with approbation in *Munger* v. *Tonawanda Railroad Co.,* 4 Comst. 359.

Was there, then, any negligence on the part of defendant ? I presume the right to the land upon which railroads are built, is not strictly analagous to the easement of the public in highways, leaving the fee in the owner of the soil, but is an absolute ownership in fee for railroad purposes, and that characteristic or incident of a public highway has relation alone to the business of the company, as common carriers upon it. If it be excusable as a trespass to browse or graze upon another's lands, it is not matter of right ; it is, at most, an immunity, not a privilege. *Knight* v. *Abert,* 6 Pa. State R. 472. The owner of an unenclosed woodland, in which he had dug an ore pit, was not, therefore,

liable for an ox which had wandered into the woodland and fallen into the pit.

This application of the rule was again made, where damages were claimed for killing a cow on the railroad track. The train was running at its usual speed, the usual signals were made, brakes put on, and engine reversed. The cow run at large, had been driven off the track once or twice before, and the owner notified. *N. Y. and Erie R .R. Co.* v. *Skinner*, 19 Pa. State R. 301. The same rule is very fully adopted in New York, and put upon the same ground, that defendant is not blameless in permitting his cattle to be upon the railroad track. See cases above cited, 5 Denio, 259 ; 4 Comst. 357 ; 11 Barb. S. C. R. 114; 13 ibid. 496 ; 14 ibid. 365 ; *Williams* v. *Michigan Central R. R. Co.*, 2 Mich. 261 ; contra, see *Kerwhaker* v. *Cleveland, Columbus and Cincinnati R. R. Co.*, Am. Law Register, April, 1855.

These roads with the mode of operating them, would become dangerous to travel, and almost useless to their owners and the communities, if the immunities of herds of wandering, loitering cattle upon them, can be put upon the footing of protected privileges. We do not feel called upon to close our eyes to the carelessness of owners, if apprised of these habits.

Nor should we feel that a case of negligence on the part of the railroad had been made out, by showing simply the killing of the stock. Railroads may and ought to be liable for malicious mischief, or willful injuries ; nor should the scrutiny be too critical in cases of convictions for that gross negligence, which indicates the absence of the lowest degree of care or attention. *Wynn* v. *Allard*, 5 Watts and Serg. 524 ; such reckless conduct might render the company liable.

Railroads may not omit all care, prudence or skill, and ground themselves upon an immunity from all responsibility, because they are lawfully pursuing their own business, upon their own land. They are ever under the strictest duty of care, and liable for slight neglect, while there are passengers or freights to be endangered by experiments in running on stock. But even without this, they may not with impunity, wantonly or willfully, nor with such total or gross negligence as evidences willfulness, run upon and injure persons or stock, trespassing upon the road.

The proofs of negligence offered, are that the whistle was not sounded, nor speed of train checked, but apparently increased, when the cow was killed. As to different hogs, an omission to sound the whistle, without any particular fact as to omissions of other means ; but when one hog was killed, there is no testimony, save the killing without slackening speed ; and in each

instance, that the road was level, in open prairie, and stock might have been seen. Did the engineer or other proper person on the look-out, see this stock ? If so, when ? Was it in time, and at a distance, that signals would be available, or the train stopped ? If so, what should have been done, and what was neglected ? Speed in the transit, and punctuality in arrivals and connections, are desirable, are required in this mode of conveyance. They are lawful. Speed may be regulated by the companies, to suit the times and the places. Trains running at high speed, cannot be suddenly stopped; nor will the same means effect it, within the same distance. It must depend more or less upon the condition of the rail, the grade, the weight of train, and rate of speed. A casual spectator may possess little knowledge of the adequacy of the means, in particular cases.

When such obstructions, as cattle, which may be thrown from the track, are discovered too near to avoid collision by stopping the train, it has been said, and with a high degree of probability, that the greater the speed, the greater the safety to the train in the collision. Such may have been the necessities in this case, with the cow. The increased speed in this case, may have a double solution, as care for the safety of the train, for which the highest degree of care was required, or as evidence of wantonness or willfulness.

The defendant's instruction is too broad and general, embracing higher degrees of care than the law will require for its protection to stock in this condition. The plaintiffs admit none, except at crossings, or by implication on defendant's own land, which cannot be, I conceive, on the railroad which belongs to them.

The true medium in this case is between, and would embrace, wanton, or willful, and gross negligence.

Judgment reversed, and cause remanded for new trial.

CATON, J. I concur in the judgment and rule laid down in this case.

*Judgment reversed.*