## JAMES HEADEN

### *v.*

## LEONARD H. RUST.

1. STOCK—*may rightfully run at large.* All persons have a right to permit their cattle to run at large on the highways and commons, except so far as they are prohibited by legislative enactment.

2. CLOSE MUST*BE FENCED—*stock may run at large.* The rule that, in order to maintain trespass for damage done by stock, the owner of the close must have it surrounded by a good and sufficient fence, as announced in *Seeley* v. *Peters,* 5 Gilm. 130, is still the law.

3. Many acts of legislation since that decision was made show that the legislature has constantly recognized it as the law, and it has been so recognized and acted upon by the people of this State ever since it was announced in 1848.

4. After such a decision as that in *Seeley* v. *Peters* has been recognized by the legislature and acquiesced in by the people for such a length of time as eighteen years, it belongs to the legislature to change the rule, if the people wish to have it changed.

5. RULE MODIFIED AS TO RAILROADS—*on what principle.* And though, as to railroads, the rule has been so modified that, where the roads are not bound to fence they have the right to run their trains, and stock on the track are trespassers, while owners may rightfully permit the stock to run at large, they taking their own risk, still this modification is on the principle that the public interest and convenience, for which such roads were mainly created, makes it their duty to run trains over such places, in the performance of which duty they are not liable, except for gross negligence, and does not affect the rule in ordinary cases.

6. DIVISION FENCES—*common law rule.* The common law rule requiring the owner of stock to keep it upon his own land has been recognized, in some cases in this State, as governing inside or division fences.

WRIT OF ERROR to the Circuit Court of Fulton county; the Hon. CHAUNCEY L. HIGBEE, Judge, presiding.

The facts appear in the opinion of the court.

Messrs. JUDD & JAMES, for the plaintiff in error

Mr. S. P. SHOPE, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action of trespass, commenced by James Headen, before a justice of the peace, against Leonard H. Rust, to recover damages sustained by the trespass of the hogs of plaintiff in error. On the trial before the justice of the peace, defendant in error recovered a judgment for the sum of seven dollars and fifty cents. The case was removed to the Circuit Court by appeal, and at the September Term, 1864, a trial was had before a jury.

On the trial the plaintiff proved that the defendant's hogs were permitted by the latter to run at large in Fairview township, Fulton county, Illinois, in the fall of 1863, and that during the months of September, October and November, and before the commencement of this suit, defendant's hogs, at different times, got into the plaintiff's corn field in Fulton county, Illinois, and destroyed twenty-five dollars' worth of corn; that the corn field was inclosed by a fence, and was part of plaintiff's farm. Plaintiff also introduced evidence tending to show that his fence, inclosing the field of corn, was a good and sufficient fence to turn hogs and other stock not breachy. The defendant, on his part, introduced evidence tending to show that the fence inclosing the field on the north and west sides, was not good and sufficient to turn hogs not breachy, but that the field was so badly fenced that hogs not breachy could get in and out at a number of places. And this was all the evidence offered in the case by either party.

Whereupon the plaintiff asked the court to instruct the jury as follows:

" That if the jury believe from the evidence in the case that the defendant's hogs went into the plaintiff's inclosure and did damage to his crop of corn, they will find a verdict for the

plaintiff and assess his damages at the amount they may find from the evidence that injury actually was done; and it matters not what was the condition of the plaintiff's fence, so far as his right to recover some damages is concerned, if the evidence shows that he sustained damages by said hogs injuring his crop, inasmuch as the owner of the field is and was not obliged to keep up a good and sufficient fence around his field to keep out his neighbor's hogs; but the owners of hogs permit them to run at large at their peril."

But the defendant objected to the giving of this instruction, and the court sustained the objection and refused to give the same to the jury, to which refusal the plaintiff excepted.

The defendant then asked the court to instruct the jury as follows:

" 1. The rule of the common law requiring the owner of cattle, hogs, etc., to keep them upon his own ground, or else to respond for whatever damage they may do to another's crops, does not prevail in this State.

" 2. In order to maintain an action for the trespass of hogs upon one's inclosure whereby damage is sustained, the owner of the inclosure is bound to surround it by a good and sufficient fence; and if the jury believe from the evidence that the plaintiff's field of corn, to which defendant's hogs did damage, was not inclosed by a good and sufficient fence to turn hogs not breachy, then they will find for the defendant."

To the giving of which instructions the plaintiff objected; but the court overruled the objection and gave such instructions so asked by defendant to the jury, to all which the plaintiff then and there excepted.

The jury, after retiring to consider, returned a verdict for the defendant. The plaintiff then moved the court for a new trial for the following reasons, viz.:

" 1. The court erred in refusing to give the jury the instruction asked by the plaintiff.

"2. The court erred in giving the jury the instructions asked by the defendant."

But the court overruled the motion for a new trial and rendered judgment against the plaintiff for costs; to all which the plaintiff then and there excepted. The case is brought to this court by the plaintiff below by writ of error, and the following errors assigned, viz. :

"1. The court below erred in refusing to give the jury the instruction asked by the plaintiff.

"2. The Circuit Court erred in giving to the jury the instructions asked by the defendant.

"3. The court below erred in overruling the plaintiff's motion for a new trial."

Plaintiff in error, on this record, presents the question whether the rule announced in the case of *Seeley* v. *Peters,* 5 Gilm. 130, is the law of this State. He contends that, while that case has not in terms been overruled by subsequent adjudications, the rule has been changed and in effect overruled. That case was decided in 1848, and has, during all the time since, been regarded and acted upon by the people as the law of the land. Nor has the question until this time ever been directly presented, asking to have the decision reviewed by this court. The legislature has also, by numerous enactments, clearly manifested that they regarded the rule there announced as the law of this State.

At the session of 1851, the general assembly adopted the law regulating township organization, and by article three, section four, declares that the voters of the towns, at their annual meetings, may determine the number of pound masters and the locality of pounds. To make rules and regulations for ascertaining the sufficiency of all fences in such towns, and for impounding cattle. To determine the time and manner in which cattle, horses, mules, asses, hogs, sheep or goats shall be permitted to run at large.

These provisions recognize the rule as announced in *Seeley* v. *Peters*, as they recognize the duty to fence against stock, and authorize the voters to adopt all rules necessary to ascertain the sufficiency of all fences in the town. If owners were not required by law to fence their lands against stock, why confer the power to ascertain whether fences were sufficient? If owners were not required to fence against stock, why should the public feel any concern about fences? Again, if the general assembly did not recognize the rule, how can we account for their conferring the power to determine the time and manner in which stock should be permitted to run at large. If they had supposed that stock were by the existing laws prohibited from running at large, and had designed to change the law, it seems at least probable, that they would have simply conferred power to permit them to do so, under such restrictions as the voters might impose, but they seem to have authorized the voters to restrict the right already existing instead of authorizing them to confer a power not already existing. This enactment still remains in force, but amended by the act of the 20th of February, 1861 (Sess. Laws, 221), so as to give them the power " to determine what shall be a lawful fence within such town."

At the session of 1853 (Sess. Laws, 152), the general assembly declared that in the counties of Henry, Will, Livingston and Lake, any person or persons after the first day of the succeeding month of March, who should be the owner of, and permit any sheep, hog or hogs, shoat or shoats, pig or pigs, to run at large should, on conviction be fined five dollars for each head so running at large. On the 12th day of February, at the same session, a similar act was passed, applying to Du Page county. On the 18th day of February, 1857, a similar law was adopted for Mercer county. And, on the 10th day of February, 1859, a law was passed prohibiting sheep and swine from running at large in the counties of Mercer and Rock Island, under a penalty of two dollars. This latter act repealed the former act relating to Mercer county. At the same session an act was passed declaring the Illinois river, after its junction with

the rivers Des Plaines and Kankakee, through Grundy county, to the west side thereof, a lawful fence; and it provides that any animal or animals crossing the river between those points, and thus entering into inclosed lands on the other side shall be trespassers, and the owner or occupant of such land may bring an action of trespass against the owner of such animal and recover damages, as if the inclosure thus entered had been fenced on the river side with a fence sufficient to turn ordinary cattle.

This legislation establishes the fact the general assembly and the people of the State understand the law to require owners of land to fence against the depredations of stock, and that all persons have a right to permit their cattle to run at large on the highways and commons, except so far as they are prohibited by legislative enactment. If such was not the understanding, such legislation as has been adopted since that decision was announced would not have occurred. And we might also have expected, instead of such legislation, that the owners of animals would have been required to fence them in their own inclosures. Instead, however, of such a general law, we find the general assembly has only so required in particular instances and specified localities as to particular classes of animals. The conclusion from these enactments seems to be irresistible that the people have accepted the rule in *Seeley* v. *Peters* as the law, and have manifested no disposition to disturb it, except in particular localities.

Although it might be conceded that the construction of our statutes relating to fences and inclosures then in force may have been doubtful, still, when we see that the interpretation then given to these laws has been recognized by the legislative department of the government, and acquiesced in by the people for such a length of time, we do not feel warranted in reviewing the decision or the reasoning which led the court to its adoption. Having remained the rule for so great a length of time, it now belongs to the legislative department more properly than to the judicial to change it, when the wishes of the people shall require it. When an interpretation has been

given to a statute, and that construction has been long accepted and acquiesced in by the government and the people, and when all classes of the community have conformed to the law as thus announced, we can see no necessity to overrule the decision and reverse the rule simply because the construction then given may not seem to have been the most reasonable and consonant to the rules of construction. We shall, therefore, abstain from discussing the question whether the rule as announced in *Seeley* v. *Peters*, is such as we should announce if the question was now before us for the first time; but will confine ourselves to the question whether subsequent adjudications have changed or modified the rule.

In the case of the *Chicago and Mississippi Railroad Company* v. *Patchin*, 16 Ill. 198, the case of *Seeley* v. *Peters* is referred to and approved. In the case of *Misner* v. *Lighthall*, 13 Ill. 609, the doctrine announced in *Seeley* v. *Peters* was considered and approved. Again, the case of *McCormick* v. *Tate*, 20 Ill. 334, approves the rule as limited and qualified by the case of *Buckmaster* v. *Cool*, 12 Ill. 74. These are believed to be the only cases which refer directly to the rule of *Seeley* v. *Peters*, but they clearly recognize it as the law. And while some of them recognize the common law as governing inside or division fences, they all recognize the rule of that case as governing exterior inclosures.

It is, however, claimed that, in various railroad cases referred to by appellant, in principle, overrule *Seeley* v. *Peters*. The cases referred to hold that the road, at exempted places, is not required to fence against stock, nor is the owner required to keep his animals inclosed. And that stock getting upon the railroad track are technically trespassers, and the company is not liable for injury they may sustain, unless it is occasioned by gross negligence amounting to gross misconduct. *Chicago and Mississippi Railroad Company* v. *Patchin*, 16 Ill. 198; *Great Western Railroad Company* v. *Thompson*, 17 Ill. 131; *Central Military Tract Railroad Company* v. *Rockafellow*, 17 Ill. 541; *Illinois Central Railroad Company* v. *Reedy*, 17 Ill. 580. Neither party then being bound, under the rule

announced in these cases, to fence, what are their rights, duties and liabilities? Railroad companies have not only the right, but it is their duty, imposed by the acceptance of their charters, to run their roads and use their franchises. It is their duty to do so, to subserve the public interest and convenience, for which, in a great measure, they were created. To enjoy these rights, they were compelled to acquire the right of way on which their roads are constructed. And the State, in the exercise of its power to adopt reasonable police regulations, have required these companies to fence their tracks so as to prevent animals from getting upon their roads, except at places where public convenience would not permit, or in unsettled places, where there is no necessity for such precaution.

It will, we apprehend, not be contended that this police regulation was adopted simply to protect animals from injury or destruction. But a higher, broader and more comprehensive policy dictated the adoption of the measure. A natural regard for the safety to human life was the great controlling motive, but incidentally affording protection to stock from injury and for the safety to human life was the great controlling motive, but incidentally affording protection to stock from injury and its owner from loss. Railroad travel at all times, under the highest order of skill, united with the greatest prudence and precaution, has, in all countries, been regarded as the most hazardous of all the modes. And all know that, to permit animals to congregate on the railroad tracks, and to come in collision with passing trains, must increase that hazard. This requires no reasoning to prove the fact, but its mere statement would seem to amount to demonstration. We must, therefore, conclude that it was a solicitude for the safety of persons traveling on railroad trains more than for the protection of animals from injury or their owners from loss, that induced the enactment.

Then, if such obstructions conduce to the hazards to human life, and as railroad companies are held to the highest practical degree of skill and diligence for the safety of passengers, why permit other members of society to largely increase these dangers, simply that they may derive a small profit by permitting their animals to run upon the right of way owned by such companies? While it is true that owners of animals may rightfully

13—39TH ILL.

permit them to run' at large, when they do so it is with the risks incident to the exercise of such a right. If an individual turns his cattle in the highway, and they fall into a pit on another person's uninclosed land, it would hardly be contended that the owner of the land would be liable for damages. Or, if the owner of an animal were, with the permission of a neighbor, to turn his horse into the field of the latter, for which no compensation was to be paid, and knowing, at the time, that there was in it a dangerous pit, or morass, and the animal should thereby be killed, who could suppose that the owner of the horse could recover damages of the owner of the field? In such a case the latter would only be liable for gross negligence.

If, then, it was conceded that animals are on the track of the road rightfully, the owner knows, when he permits them to stray there, the danger they incur, as much as the man who turns his horse into the field, knowing of the pit or the morass. And, in principle, we are at a loss to perceive the difference. It is true the owner of the field could have filled the pit or fenced the morass, and thus secured the safety of the animal, and the railroad company could secure the safety of animals by ceasing to operate their roads, but in neither case are they under any obligation to do such acts for the benefit of the owners of stock. A railroad company has no legal right to fence their tracks at road crossings, or in towns and villages, and would be trespassers if they did so; and the owner, having the right to permit his animals to run at large, does so knowing their propensity to wander, and their liability to get upon the railroad track at such places, and knowing, likewise, that the company have the right to run their trains over such places. The right of the company, in this respect, is not subordinate to the right of the owner to permit his cattle to run at large. And if they stray upon the road and are injured he has no remedy except for gross negligence of the company.

· We do not perceive that this rule conflicts with that announced in *Seeley* v. *Peters*, but, if it does, it is only a modification for public safety and interest. Nor do we see that if it

is a modification that it is in favor of railroad companies, but it is in favor of the traveling public, for whose safety the road is required to be fenced at all practicable places. And the rule is only in consonance with that policy.

The rule having obtained, and been recognized by the legislative department, and acted upon by the judicial, and acquiesced in by the people for such a length of time, we feel unauthorized to disturb it by its reversal. The judgment of the court below must, therefore, be affirmed.

*Judgment affirmed.*