## HARVEY OIL

*v.*

## RICHARD ROWLEY.

1. IMPOUNDING ANIMALS—*construction of act of* 1869. The act of 1869, making it unlawful for the owners of domestic animals of the species horse, bull, etc., to suffer them to run at large in certain counties, and authorizing them to be impounded when found at large, etc., does not authorize the taking up of any cow, heifer, or steer. The term "species bull," in the act, embraces bulls of all kinds and descriptions, without reference to size, age or quality, but not cows, heifers or steers.

2. SAME—*township ordinance.* A township ordinance requiring the owners of horses and cattle to confine them during the night-time, and imposing a fine of twenty-five cents per head for each animal suffered to run at large in the night-time, can not be construed to justify the impounding and detention of such animals when not confined as required.

3. SAME—*distress for damages.* As cattle may lawfully run at large in this State, and the owner of land can not recover for trespass committed by them upon his land unless the same is inclosed by a lawful fence, it follows that he can not take them *damage feasant*, and hold them until amends are made, as there is no injury requiring amends where he can not maintain trespass.

WRIT OF ERROR to the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. C. A. DUNWELL, for the plaintiff in error.

Mr. WILLIAM LATHROP, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee brought replevin to recover three cows, two heifers and two steers, from appellant, and the latter pleaded *non cepit, non detinet,* and three pleas of justification, the first, that the cattle were unlawfully running at large, contrary to the statute, and that defendant, a householder, did then and there take up such animals and safely inclose them in his yard, and provided them with sufficient food and water until they were replevied; that within two days after thus taking such cattle up, he notified the owner thereof, and he avers that plaintiff did not pay or tender him the fees and charges to which he was entitled.

The second special plea, in substance, avers the cattle replevied were of and included in the species of domestic animals known as being of the species of horse, bull, mule, ass, sheep and hog, were running at large, and were so suffered by plaintiff, who was the owner of the same, contrary to the statute, and that defendant took them up and impounded them, as averred in the first special plea, except that the animals were found on defendant's close when taken up, and that he thus acquired a lien thereon for his fees and charges, which were not paid.

The third special plea sets up an ordinance of the township, which prohibited horses and cattle from running at large in the night-time, and imposing a penalty of twenty-five cents a head, for its violation; and that plaintiff did permit his cattle to run at large in the night-time, and he so found these cattle on his farm, and took them up and impounded them, as he lawfully might, and furnished them with food and water; that he had frequently notified plaintiff to keep up his cattle, and that he had not paid or tendered defendant his reasonable charges which he was entitled to under the law, for which he

had a lien and for which he lawfully might retain the possession of the cattle.

The circuit court sustained a demurrer to each of these pleas, and defendant abided by them. The case was submitted to the court without a jury, and it was agreed the court might, under the pleas of *non cepit* and *non detinet*, render a judgment for plaintiff on those issues. The judgment was rendered, and this writ of error is prosecuted.

Plaintiff in error has referred us to the act of 1869, (Sess. Laws, p. 176,) as the law under which a justification was sought by the first and second special pleas. The first section of that act provides, that it shall not be lawful for the owners of any domestic animals of the species horse, bull, mule, ass, sheep and hog, to suffer them to run at large in the counties named. And all such animals which may be found running at large in those counties may be taken up by any householder of such counties, who shall keep them safely in his stable, lot or inclosure, and shall provide them with a sufficiency of suitable food and water until taken away.

The second section provides that the taker-up shall give notice within two days to the owner. And the third provides that the owner may, within ten days after notice, pay the charges, which are fixed by the statute, and thereupon the taker-up shall deliver them up to the owner.

These are the provisions of the act relied upon by these pleas, and the plaintiff in error insists that the pleas are good, and that the court erred in sustaining the demurrer. On the other hand, it is urged that cows, heifers and steers are not embraced in the provisions of this law, and that the pleas, for that reason, do not constitute a bar to his action.

Does, then, the words "species bull" embrace cows, heifers and steers? Linnæus, the great naturalist, divides the science of zoology into classes, classes into orders, orders into genera, genera into species, and species into individuals. These general divisions are believed to still obtain among naturalists. A species, then, embraces individuals of the same kind,

and all of the individuals having the same characteristics. It embraces all individuals that are precisely alike in every character, and not capable of change by any accidental circumstances, and capable of uniform, invariable and permanent continuance by natural propagation. Or, it is founded on identity of form and structure, both external and internal— the principal characteristic of species in animals being the power to produce beings like themselves, and who are themselves also naturally productive. These seem to be the generally accepted definitions of the word "species," in zoology. Then these bovine animals all seem to belong to the same species. They are identical in form and structure externally and internally, and naturally capable of producing like beings with themselves. The mere circumstance which changed the bulls to steers can in nowise affect the definition. They are nevertheless members of the same species.

But when we turn to the third section of this act, we see that the term "bull" is referred to as an individual of the species. It provides the fees that shall be paid for taking up and feeding the animals enumerated in the first section, and uses this language: " For taking up any horse, mule, ass, or bull, fifty cents." This would seem to place it beyond question, that cows, heifers and steers were intended to be excluded. If not, surely some other language would have been employed. We can only conclude that the term "species bull" was intended to embrace bulls of all kinds and descriptions, without reference to size, age or quality. But it is said, that the other description of cattle came as fully within the reason of the statute as bulls. This may be true, and we should, no doubt, so hold, if it were not for the language of the third section. But we can not say that, when a cow, heifer or steer is taken up, the fee could be paid for taking up a bull. The legislature had the power to make this distinction, and seem to have done so in this enactment. Hence the pleas are bad, and the demurrer was properly sustained.

When we remember that the General Assembly use such language as is apt and proper to embrace the objects intended to be embraced in a law, it would be unreasonable to hold that words shall be construed contrary to their etymological and grammatical meaning. The word "bull" can, by no rule of construction, be held to mean a cow or a steer. Bulls are, no doubt, individuals of the bovine genera, and also of the species ox or cow, but individuals are never taken as a representative of a genus or a species. They are, no doubt, embraced in both. We can not, according to the definition of the term "species," say that mules form a species, because they are hybrids, being neither of the species horse nor ass, but are a cross between the two; nor can they reproduce beings like themselves.

Again, the legislature, by former enactments, when referring to kine, have almost uniformly designated them as cattle or neat cattle, thus embracing the entire species.

The third special plea presented no defense. It attempted to justify under a township ordinance, but the ordinance does not authorize the taking up and impounding of the cattle that are not confined by the owner in the night-time. The ordinance only provides that the owner violating the by-law should be subject to a fine, to be collected as in case of trespass. It would be impossible to construe this by-law as giving authority to impound and hold cattle that were not confined by the owner as required. The court decided correctly in sustaining a demurrer to this plea.

It is also urged that appellant had the right, under the common law, to distrain these cattle *damage feasant,* and to impound and hold them until amends were made for the damages sustained. This position is fully met by the cases of *Seeley* v. *Peters,* 5 Gilm. 130, *Headen* v. *Rust,* 39 Ill. 186, *Stoner* v. *Shugart,* 45 Ill. 76, and *Ill. Cent. R. R.* v. *Arnold,* 47 Ill. 173. They announce the rule that, in this State, cattle may run at large, and that an owner of land, to be able to recover for trespasses committed by the cattle of others, must

inclose his land with a lawful fence. If, then, a person can not recover damages for the trespasses of his neighbor's cattle unless they break through a lawful fence, he can not take them *damage feasant* and hold them until amends shall be made, as there is no injury requiring amends to be made. Were it not for these decisions, the common law of distraint would probably apply.

We are also referred by appellant to the 18th section of the statute of 1845, entitled "Fences," as controlling this case. Neither of these pleas is drawn under that section. It provides that all animals trespassing, the owners of the same, when known, shall be notified, and if they refuse to secure them, the person on whom the trespass is committed is authorized to secure the animals, and is required to supply them with provender and water, for which he shall be entitled to compensation, etc.

It will be observed that these pleas do not aver that the cattle had previously committed trespasses on appellant, and that notice had been given.

Again, this section must be construed in connection with the other sections of the act, and in the light of the decisions to which reference has just been made. The 15th section only gives an action when animals shall break through a lawful fence, and thus commit the trespass. The construction given to this statute is repugnant to a recovery, unless the fence is lawful.

We are urged to overrule the cases referred to, as the condition of the country has changed so that the common law of England is now applicable to our condition. The first of these decisions was announced a quarter of a century since, and the legislative department of the government has not disturbed it, except in particular localities, although it is believed many efforts have been made, and failed. Whilst the law, as it now stands, is inconvenient in a large portion of the State, it is adapted to the convenience and interest of another large

section. This being so, we must leave all changes to the law-making power, which can apply the corrective when they deem it for the public good.

The judgment of the court below is affirmed.

*Judgment affirmed.*