Summers, J.
The plaintiff in error, in his petition in the court of common pleas, alleged, in substance, that the defendant was a corporation ; that plaintiff’s cattle, in September, 1893, escaped from his enclosure onto the lands of the defendant by reason of defendant’s failure to maintain its part of a partition fence ; that they passed through said lands into an open way leading to a highway, and that they wandered down said open way onto the unenclosed lands of the defendant, and there ate of nitrate of soda, a poisonous substance used in the manufacture of powder, which defendant carelessly had left lying around and exposed upon its said unenclosed lands, and thereby had caused the death of five of said cattle.
The defendant answered, admitting that it was a corporation and that five of plaintiff’s cattle bad died, and denying each and every other allegation of the petition.
On the trial the plaintiff introduced testimony tending to *446 show that the cattle had escaped from his pasture lands to adjoining lands of defendant through a defect in that part of the partition fence between said, lands, which it was the duty of the defendant to maintain; that two of his sons, seeing the cattle on the said lands of defendant, drove them therefrom through a gate near the river onto some waste lands across the river belonging to defendant, with the purpose of driving them up the river to plaintiff's home farm about a mile distant ; that the cattle escaped from them in a thicket on this waste land ; that the boys went home, and one of them returned-on a horse to look for the cattle ; meanwhile the cattle wandered down the river, and passed from this waste land ■over a wire fence, which was down, onto the unenclosed lands of defendant, where its powder mills were located ; that the defendant used nitrate of soda in making powder, and that in unloading it, some of it would get onto the ground around the building where it was stored ; that it was poisonous, and that previous to the time these cattle were there, other cattle had died on the premises, and probably from having taken some of the nitrate of soda; that plaintiff's cattle had strayed about the building in which the nitrate of soda was stored ; that they were found shortly after noon and driven home; that some of them showed signs of distress while being driven home, and that during the night of that day five of them died.
In the trial, when the plaintiff rested, the defendant made a motion to arrest the testimon}’’ from the jury and to instruct the jury to bring in a verdict for the defendant; the plaintiff then asked leave to amend his petition; the court refused leave to amend, and sustained the motion to instruct the jury to bring in a verdict for the defendant, to all of which the plaintiff excepted.
The petition was framed on the theory that the injury resulted from the negligence of the defendant in so maintaining its part of a partition fence as that the cattle escaped from the pasture and wandered onto defendant's land where they got the poisonous substance.
*447 There was a variance between this allegation and the proof, which was, that the cattle, having escaped through the defective part of the fence into the adjoining field, were let out of it through a gate by plaintiffs sons for the purpose of driving them home, and that the cattle got away from them and wandered down the river onto the unenclosed lands of the defendant.
The defect in the partition fence was not the proximate cause of the injury, and the liability of the defendant, if any, arose from the other facts which were proven. No bill of exceptions setting out the proposed amendment was taken, nor does it appear from the record what amendment the plaintiff asked leave to make ; the presumption arises, therefore, that the court properly refused leave to make the amendment which was proposed, and that there was no error in this respect. However, if the variance was not material, an amendment was unnecessary, and the court would not have been justified in arresting the case from the jury and in directing a nonsuit. Barrett v. Ward, 36 Ohio St. 107.
And, whether material or not, where there is a variance between the allegations in the petition and the proof, it is not error to refuse leave to amend if the facts proved do not show a good cause of action.
While we think the petition was‘|framed on the theory we have stated, still it may fairly be considered to state, in substance, that the cattle escaped from plaintiff without fault on his part, and wandered onto the unenclosed lands of defendant and were there poisoned by a substance which defendant negligently left exposed ; and while this would not have been sufficiently definite under Hess v. Lupton, 7 Ohio, 216, (which is in line with Young v. Harvey, 16 Ind. 314), yet, treating it as sufficiently definite under the code, in the absence of a motion to make more definite and certain, the question remains whether the evidence tended to prove facts which made the defendant liable j for in that event, if the variance *448 was not material, it. was error to direct the jury to bring in a verdict for the defendant.
“The common law made it the duty of every man to keep his cattle within the limits of his own possessions. If he failed so to keep them, he failed in duty, and when they strayed upon the land of another, the owner was chargeable with a trespass. Nor did his liability for the mischief done by them depend in any degree upon his personal fault, since, if the cattle escaped from his custody, notwithstanding due care on his part, his responsibility for the injury actually committed by them was the same that it would have been had he voluntarily permitted them to roam at large. Nor did the common law impose upon the owner of lands the obligation to enclose them as a protection against the beasts of others; but he might, at his option, leave them entirely unenclosed, and it was then as unlawful for the beasts of a neighbor to cross the invisible boundary line as it would be to overleap or throw down the most substantial wall.” Cooley on Torts, sec. 337; Waterman on Trespass, secs. 858, 873. See also Morgan v. Hudnell, 52 Ohio St.--, (33 W. L. B. 262).
This rule of common law was never in force in Ohio, nor was the landowner required to fence or enclose his land. Prior to the passage of the act of April 13, 1865, (S. S. 373) (sec. 4202 et seq., Rev. Stat.) a person who left his ground unenclosed, took the risk of occasional intrusions thereon, by the animals of others running at large, and the owner of such animals took the risk of their loss, or of injury to them, by unavoidable accident, from any danger into which they might happen to wander. Kerwhacker v. C. C. & C. R. R. Co., 3 Ohio St. 172; C. H. & D. R. R. Co. v. Waterson and Kirk, 4 Ohio St. 425.
Out of the duty respecting fences and animals arises the rule as to the liability of the owner of lands for injuries to animals while straying thereon. Mr. Thompson, in his work on Negligence, page 298, says :
“ This rule is, that the owner of unenclosed land is under no obligation to fence or guard any walls, ditches, stone-quarries, or other pit-falls, or dangerous places which may exist *449 upon it, in order that his neighbor’s cattle straying thereon may not be injured. This rule obtains equally where, as in England, the owner of animals mansueta naturae is bound at his peril to restrain their trespasses, and where, as in the United States, the trespasses of such animals upon unenclosed land are deemed by the law trespasses too insignificant to be noticed.”
The plaintiff was not entitled to recover unless it was the duty of the defendant to exercise care, in the use of the poisonous substance on its own premises, to prevent plaintiff’s cattle from getting access thereto. The ground of liability, if any, is negligence, and an essential element of negligence is a failure of duty. If there is no duty, there can be no negligence. Shearman & Redfield on Negligence, sec. 8.
The right to do what one pleases with his own is subject to this important qualification, sic utere tuo ui alienum non laedas, and out of the application of this maxim the law has evolved many duties which it holds are owing from the person in possession of real estate to persons coming thereon. A writer in a recent article in The American Law Register and Review, vol. 2, N. S., 196, thus expresses it:
“It has been unquestioned law for many years that the owner or occupier of real estate owes certain duties to those who come thereon, according to the cause of their entry, and the nature of the danger to which they are exposed. To trespassers it is only against active injury; to licensees it is to give notice of hidden dangers or traps, while to invited persons (as the term is understood by the law), the owner is bound to use reasonable care, having respect to the person and character of the business carried on, to save his guest from injury while upon the premises.”
The law is well stated in Morrison v. Cornelius, 63 N. C. 346. The facts were these: the defendants had been engaged in the manufacture of saltpetre on their own lands, and upon ceasing the operation had removed the apparatus, except two troughs used in the process of evaporation, and two hogsheads, open at the top and about four feet high, which were left on *450 the lot, and contained a liquid of which saltpetre is made by evaporation. The lands were enclosed by a poor fence, and the plaintiff’s cattle, seven in number, got in a few weeks after and were found dead within the enclosure and within a few yards of the hogsheads and troughs. There was some controversy as to the quantity of liquid in the hogsheads and its accessibility to cattle. Dick, J., says:
“If a person enters upon the lands of another to use the premises for his own benefit, under a license given by the owner, or in the enjoyment of a privilege allowed by law, he takes such benefit with all the risks and perils attendant upon it; and if he has full opportunity of inspecting the premises, and there is no concealed cause of mischief, and any existing source of danger is apparent, the owner is in no way responsible for an injury which such licensee may accidentally sustain. Tudemaur v. Damns, 1 C. C. R. 272; Hunsell v. Smyth, 97 E. C. L. R. 271 ; Butterfield v. Forrester, 11 East, 60; Bush v. Brainard, 1 Cowen, 78. ‘ It is also well settled that an owner of land may on his own premises dig a well, or pit, or ditch, or do any other lawful act in the enjoyment of his property, and he is not liable for consequential injuries to his neighbor’s cattle, although these causes of danger are unenclosed and unprotected. If he does such acts with intent to cause mischief, and he uses inducements to produce such results, of course he is liable for consequent damages.’
“If be places such causes of danger near a public highway, and does not take the necessary precautions to prevent damage, they constitute a public nuisance, and he is liable for consequences, and also to an indictment. Rut when a person merely allows a cause of damage to exist on his own premises, which does not amount to a public nuisance, and a licensee or trespasser sustains injury, he has no cause of action against the owner, and the question of negligence does not arise. Damages arise in such cases from what might be styled permissive causes of injury, such as leaving a well, or pit, or ditch unprotected and unguarded. If an owner, even on his own premises, gives rise to an active cause of injury, he is required to use ordinary care to prevent damage; as, for instance, if he puts fire into his own woods, he must take reasonable precaution to prevent it from spreading into the lands of his neighbors. These distinctions are illustrated in cases involving the responsibility of railroad companies.
*451 “ A railroad company is not responsible for the value of a cow that is killed by falling down an embankment or into a ■cut or cattle-guard; but is responsible, if the cow is killed by negligence in running the train.”
In Knight v. Abort, 6 Pa. St. 472, the defendant was the owner of unenclosed woodlands, in which he had dug an ore-pit ; the plaintiff’s ox wandered onto the land and fell into the unguarded pit, and was killed. Gibson, J., says: “A man must use his property so as not to incommode his neighbor; but the maxim extends only to neighbors who do not interfere with it, or enter upon it.” And, “that he who suffers his cattle to go at large, takes upon himself the risk incident to it; that the law did not impose on the landowner the duty of making his premises safe for cattle.”
To the same effect is Hughes v. Hannibal & St. Jo. R. R. Co., 66 Mo. 325 : “ The proprietor of unenclosed land is under no obligation to make it safe for pasturage, and if the cattle of another stray upon it and are killed by drowning in an .unguarded well, there is no liability resting upon him for the loss.” See also : Ill. Cent. R. R. Co. v. Carraher, 47 Ill. 333; Headen v. Rust, 39 Ill. 186; McGill v. Compton, 66 Ill. 327; Gilliss v. Penna. R. R. Co., 59 Pa. St. 129; The Evansville & Terre Haute R. R. Co. v. Griffin, 100 Ind. 221; Bush v. Brainard, 1 Cow. 78; and cases cited in Thompson on Negligence, 298.
In the well considered case of Johnson v. Patterson, 14 Conn. 1, cited by Barteey, J., in the Kerwkacker case, the •defendant, to prevent the plaintiff’s fowls from trespassing on his premises, mixed corn-meal with arsenic and spread it upon his land, having given the defendant notice that he intended to do so, and that he must confine his fowls or in some way prevent their trespassing; and the f'owds afterward coming upon defendant’s land, ate the poison and died. Sherman, J., says: “ This is not a case in which the destruction of the plaintiff’s property resulted from acts done by the defendant in’jthe ordinary use of his own, without any intention to do the injury complained of, but in this case, the defendant scat *452 tered the poison in his enclosure with the intent to kill the plaintiff’s fowls, if they should again trespass on the place;” and defendant was held liable, and the English cases to the contrary were severely and justly criticised, and we may observe that this is no longer the law of England.
It will be noticed that the able judge at the very beginning of his opinion states that “this is not a case in which the destruction of the plaintiff’s property resulted from acts done-by the defendant in the ordinary use of his own,” etc. The-case is one of those which establish the rule that every man has a right to keep trespassing animals from his premises, but he may use no more force than is necessary to drive them off,, and he is liable for any injury he may inflict wantonly and unnecessarily. Am. & Eng. Ency., vol. 1, 580; Waterman-on Trespass, sec. 889.
It will be observed that the case before us is not a case of a pit of poisonous substance on unenclosed lands so near a highway as to be dangerous under ordinary circumstances. Such cases, even at common law, were held to be exceptions to the-general rule, and it is unnecessary to consider the principles-upon which they rest. Cooley on Torts, 341.
Trespasses by animals being driven along a highway upon adjoining unenclosed land also were held to be exceptions to-the general rule. Waterman on Trespass, secs. 858, 872.
It follows, therefore, from the rules established by the cases to which we have referred, that the evidence in the case did-not tend to prove facts sufficient to constitute a ground of liability, and that the court did not err in directing a verdict for the plaintiff, unless, as claimed in argument by plaintiff’s-counsel, the defendant was liable under the provisions of section 6958, of the Revised Statutes.
Section 6958, provides: “Whoever leaves or deposits any poison, or any substance containing poison, in any common, street, alley, lane, or thoroughfare of any kind, or any yard or inclosure other than the yard or inclosure occupied by such person, shall be fined, * * * and shall be liable to the person injured for all damages sustained thereby.”
John Little and C. H. Kyle, for plaintiff in error.
Charles Darlington, for defendant in error.
It is claimed that the fact that the lands were unenclosed is itself sufficient to bring them within the meaning of the word “common” in the sense in which it is used in the statute.
The words “unenclosed lands” do not appear in the section, and we do not know of any rule of construction that would warrant a holding that such lands are embraced in the word “common” as used in the statute. The word has had a fixed legal signification since the days of Blackstone, and in common usage its meaning has been well understood, and is not broad enough to embrace all unenclosed lands. If such lands had been in the legislative mind, the words “unenclosed land” would probably have been used, not merely because it would have been natural to do so, but also because they are more comprehensive, and might have embraced “common.”
Being of the opinion that unenclosed lands are not within the terms of the section, it is unnecessary to consider whether it would apply to a case in which the depositing of the poison resulted from the ordinary operation of a lawful business.
Defendant’s counsel claimed that the cattle were running at large within the meaning of section 4202, and although not necessary to the decision of the case, it may not be improper to say that section 4202, et seq., do not adopt the common law as to fences, but only change the law as laid down in the BLerwhacker and other cases to the extent of the provisions of said sections. In M. & C. R. R. Co. v. Stephenson, 24 Ohio St. 48, McIlvaine, J., says: Taking the whole statute together, a-majority of the court think, that to suffer such animals to run at large, “involves the element of willfulness or carelessness on the part of the owner, and that it was not intended to impose on him anything more than the duty to use reasonable care and precaution in restraining his animals upon his own premises.”
See also Railway Co. v. Howard, 40 Ohio St. 6; Rutter v. Henry, 46 Ohio St. 272.

Judgment affirmed.