# WILLIAM VOGT

*v.*

## JAMES DUNLEY *et al.*

*Filed at Mt. Vernon February 3, 1881.*

STOCK RUNNING AT LARGE—*election in respect thereto.* Under the stock law of 1874 an election may be held at any general election, or every such election, until the result shall be against cattle running at large, notwithstanding a previous vote allowing them to so run at large. But, after a vote requiring domestic animals to be kept up by their owners, no other vote upon that subject is allowed until after the expiration of five years.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of St. Clair county; the Hon. GEORGE W. WALL, Judge, presiding.

Messrs. WILDERMAN & HAMILL, and Mr. F. E. SCHEEL, for the plaintiff in error.

Mr. JAMES M. DILL, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This case was tried at the January term, 1879, of the St. Clair circuit court, before the judge, without a jury, by consent of parties, upon the following agreed facts: " It is agreed, that in the year 1872, upon a petition of the requisite number of voters of said county of St. Clair, the question of permitting stock to run at large in St. Clair county, Illinois, was submitted to the voters of said county, at the regular fall election of said year, and that a majority of all the votes cast at said election, on this question, was in favor of stock running at large in said county; that at the regular fall election of 1876, held in said county, upon a similar petition of the voters of said county, the question was again submitted to the voters of said county, and a majority of all of said voters voted in favor of keeping up stock in said county. It is further agreed, that said defendant's (Dunley) stock was running at large in Cahokia precinct since said last named vote; that said stock strayed on the lands of the plaintiff and damaged his crops; that the plaintiff (Vogt) did not have the said lands trespassed on enclosed by any fence. It is further agreed, that in case the Stock law shall be held in force in this county, and that it was unlawful for stock to run at large in this county, then judgment shall be rendered in favor of the plaintiff for the sum of one dollar and costs, otherwise the judgment shall be for the defendant for costs." It was also further agreed, at said trial of said cause, that at the election of 1876 a majority of the legal voters of Cahokia precinct voted in favor of permitting domestic animals to run at large. No other evidence was offered.

The court, on this stipulation, found the issues in favor of defendant. Plaintiff entered a motion for a new trial, but it was overruled by the court, and a judgment was rendered against plaintiff for the costs of the suit. The case was removed to the Appellate Court, where the judgment of the

circuit court was affirmed, and plaintiff brings the case to this court on error.

The decision of this case turns upon the question, whether this last election was authorized by the statute. It is claimed that, one election having been held, resulting against enclosing stock and in favor of its running at large, the power to vote on the question was thereby exhausted. On the other side, it is contended that the statute authorizes another vote to be taken after the expiration of five years from the first election.

The first section of chapter 8 (Rev. Stat. 1874, p. 130,) prohibits domestic animals from running at large, under a penalty prescribed. The second section provides, that a vote of the electors of any county may be ordered, on a petition as provided, for and against such animals running at large. The fourth section provides, that if a majority of the votes shall be cast in favor of such animals running at large, it shall be lawful for them to be so permitted.

The sixth section saves the rights of counties, etc., where an election had been had on that question, in pursuance to any law in force when this chapter took effect. The seventh section provides, that where, in any county, etc., domestic animals have been restrained from running at large, and there shall afterwards be a vote to permit them to do so, such vote shall not take effect for one year; and no vote shall be again taken, where they have been so restrained, for five years.

It will be observed that the first election was held in this case in 1872, under a law adopted that year, (see Session Laws 1871–2, p. 116,) and it was in force at the time the act of 1874 went into effect, and is within the saving clause of the latter act.

The second section of the act of 1874 is broad and comprehensive in its provisions. It provides, that " on the petition of one hundred legal voters of the county being filed

with the county clerk, before the time of giving notice of the general election in November, in any year, in counties not under township organization,  *  *  *   the county clerk shall cause notice to be given, that at such election a vote may be taken in such county, for and against domestic animals  *  *  *   being allowed to run at large," etc. It is seen that there is no limitation, but the petition, etc., may be at any general election.

It is claimed, that the provisions of this section are sufficiently broad to authorize an election to be held at any general election, or every such election, until the result shall be against cattle running at large, and when an election shall have so resulted, that another election can not be held, as provided by the seventh section, until the expiration of five years thereafter.

Will the second section bear this construction? The seventh section prescribes the time which shall expire, after an election has resulted in restraining animals from running at large, before another election shall be held to determine whether they may run at large, and there is no provision, in terms, on the subject of another election when the voters have refused to restrain such animals. Can we say that it was the intention of the law-makers to prohibit all but one election when it resulted against restraining animals, and permit other elections when a first election had resulted in favor of restraint? We think not. The first section prevents animals from running at large throughout the State, and the other sections provide a mode by which the people of any county, etc., if they desire it, may permit them to run at large. The first section, being general in its provisions, indicates that the policy of the General Assembly was, to prohibit animals from running at large. If such was the general policy why, when a vote had resulted in favor of their running at large, prevent the people of that county from ever availing themselves of the benefits of the general policy, and permit those who had adopted it to reject it by a subsequent vote?

To so suppose is unreasonable. We, on the contrary, must expect that body, to effectuate its general policy, to afford more means and greater facilities to avail of it than to reject it.

If the General Assembly had favored the policy of permitting animals to run at large, it would simply have provided that the people might vote to keep them enclosed, thus making that an exception to the general law. On the contrary, it made the rule, to enclose stock, and liberty to permit them to run at large the exception to the general law. This, we think indicates the policy was to enclose stock. This being the object of the law, if required, the act should receive a liberal construction to carry out its provisions. This is, perhaps, rendered more manifest from the fact, that when the people voted not to permit animals to run at large, the seventh section prevents another election for five years.

The section is broad enough to authorize more than one election, where it results in favor of stock running at large. And we think it was intended to, and does, authorize annual elections until one shall result in favor of their restraint. This being so, this election was authorized and binding, and having resulted in favor of restraining stock of the character of that stock named in the stipulation, defendant in error violated the law in permitting his animals to trespass on plaintiff in error, and was liable for the penalty.

The judgment of the Appellate Court must be reversed and the cause remanded.

*Judgment reversed.*