## ANNA BACH *et al.*

### *v.*

## THOMAS AMMONS.

### *Filed at Mt. Vernon May 7, 1883.*

1. ˙STOCK RUNNING AT LARGE—*of elections in respect thereto—by counties, and by towns, or other legal subdivisions.* A county, after the adoption of township organization, although a number of the towns of the county have already adopted the Stock law, prohibiting stock from running at large, may vote upon the question of Stock law as a county.

2. Towns that have adopted the Stock law as towns, can vote again on that question at a county election, within five years from the date of their having voted to restrain stock in such towns.

3. The act known as the "Stock law," expressly provides for two kinds of elections,—one to be held by counties, as such, and the other by certain legal subdivisions of the county, namely: precincts, townships, incorporated cities, villages and towns.

4. Where an election is held under the act by the county, resulting in favor of restraining cattle from running at large, such vote is binding on the county, and every precinct, township or other integral part thereof, for a period of five years, without regard to whether such integral subdivision voted for or against the law. In such case there is no power in the county, or in any subdivision thereof, to call or hold another election for the purpose of reconsidering the question until after the expiration of five years.

5. But if, at such county election, a majority of the votes cast are in favor of stock running at large, the county may, from year to year, resubmit the question until a majority vote is obtained in favor of the prohibition. And the vote at such county election resulting in permitting stock to run at large will only be binding on such townships, precincts, etc., as vote that way, and the Stock law, prohibiting stock from running at large, will nevertheless be in full force and effect in such towns, precincts, etc., as vote for its adoption.

6. Moreover, so long as the county votes against the law, or in favor of stock running at large, any township or precinct may, under section 5, call an election for the purpose of submitting the question again to the voters thereof, and this may be done without regard to how such town or precinct voted at the county election; and if a majority of the votes cast at such election is against adopting the law, the question may be again submitted to the voters of such town or precinct until the law is adopted, after which such town or precinct can not resubmit it again until after the expiration of five years.

7. If, however, in the meantime a county election is legally called to vote on the question, such town or precinct adopting the law will have the same right to vote upon the question as every other town or precinct, notwithstanding five years may not have elapsed since such town or precinct election; and should its vote at such county election be again in favor of the law, its provisions will continue to be in force in such precinct or town, notwithstanding a majority of the county may have voted against it.

APPEAL from the Appellate Court for the Fourth District; —heard in that court on appeal from the Circuit Court of Clinton county; the Hon. GEORGE W. WALL, Judge, presiding.

Messrs. VAN HOOREBEKE & FORD, for the appellants.

Messrs. MURRAY & ANDREWS, for the appellee.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The trespass complained of in this case consists of an entry by appellants' cattle into an uninclosed wheat field belonging to appellee, and the right of recovery depends upon whether, under the circumstances disclosed by the record, appellee was legally bound to maintain a fence around the premises. Whether any such legal obligation existed or not, of course depends upon the several provisions of our statute relating to stock running at large.

The facts in this case, as stipulated by the parties, are, in substance, as follows: At a county election in November, 1872, a majority of the legal voters of Clinton county voted in favor of permitting stock to run at large. In 1874 the county adopted township organization. In 1882 the question was again submitted to the people of the county, at the regular county election, resulting in a majority of 263 against stock running at large. It appears, however, that between the adoption of township organization in 1874, and the general county election in 1882, six of the townships of the county, under the 5th section of the act, severally held elections, resulting in the adoption of the Stock law,—or, in other

words, in prohibiting stock from running at large. The elections in three of these townships were held more than five years before the general election by the county in 1882, and the other three in less than five years before that election. Excluding the votes of these six townships, the county, at the election in 1882, gave a majority of 549 against the law, —or, in other words, in favor of stock running at large; but by merely excluding the votes of the three townships which did not hold elections within the five years, the majority is only 89. On the other hand, if the vote of all these townships is taken into the estimate, there is, as before stated, a majority in the county of 263 for the law,—that is, in favor of restraining stock from running at large. Santa Fe, the township in which the alleged trespass occurred, voted at the county election in 1882 in favor of stock running at large, and has never voted any other way.

On the foregoing state of facts the following questions are submitted for our determination: First, can the county, after adopting township organization, and a number of towns of said county having adopted Stock law, vote upon the question of Stock law, as a county; second, can towns that have adopted Stock law, as towns, again vote upon that question at a county election within five years from the date of their having voted to restrain stock in such towns. These questions practically amount to the same thing, and must both be answered in the affirmative.

This whole subject is regulated and governed by sections from 1 to 7, inclusive, of chapter 8, of the Revised Statutes, entitled "An act to revise the law in relation to permitting animals to run at large," commonly called the Stock law. The 1st section contains a general prohibition against owners of stock permitting them to run at large in this State, except when authorized by the provisions of that act. The 2d section provides for submitting the question whether stock shall be permitted to run at large in any particular county of the

State, to a vote of the people of such county.  The 3d section prescribes the form of the ballots, the manner of holding elections, canvassing the returns, etc.  Sections from 4 to 7, inclusive, are as follows:

"Sec. 4.  If a majority of all the votes cast in the county at such election shall be in favor of domestic animals, or any species thereof, running at large, it shall be lawful in such county for domestic animals, or any species thereof, to run at large: *Provided*, that if at any such election the vote in any precinct in counties not under township organization, or any town in counties under township organization, or in any incorporated city, village or town in any county, shall be against domestic animals, or any species thereof, running at large, it shall not be lawful for such animals to run at large in such precinct, or town, or incorporated city, village or town.

"Sec. 5.  In any county wherein animals, or any species thereof, are allowed to run at large, pursuant to any vote heretofore had or which may hereafter be had, on the petition of twenty legal voters of any precinct, if such county is not under township organization, or town, if such county is under township organization, or any incorporated city, village or town, in either case, being filed with the county clerk of such county, a vote may be taken in such precinct, etc., in the manner provided in this act; and if a majority of the votes cast shall be against such animals running at large, then it shall not be lawful for them to run at large in such precinct, etc.  The vote provided for in this section may be taken in such precinct, etc., whether it shall previously have voted against or in favor of such animals running at large therein.

"Sec. 6.  This act shall not be so construed as to prohibit the running at large of domestic animals in any county or town, etc., where the same is allowed pursuant to an election held by virtue of any law in force at the time this act shall take effect.

"Sec. 7. Where, in any county, town, etc., domestic ani-
mals shall have been restrained from running at large, and
such county, town, etc., shall vote to permit such animals to
again run at large therein, such vote shall not take effect so
as to permit such animals to run at large within one year
after the election: *Provided,* that no vote to permit such
animals to again run at large in any county, town, etc., where
the same have been restrained by any election after the adop-
tion of this act, shall be taken within five years after such
restraining."

Our view of these several provisions of the statute is in
substance this: The act expressly provides for two kinds
of elections, one to be held by counties, the other by certain
legal subdivisions of the county, namely, precincts, townships,
incorporated cities, villages and towns. The rights of the ·
inhabitants in one of these integral parts of the county, under
an election held therein, are, necessarily, under certain cir-
cumstances, subordinate to the rights of the people of the
county in general, under an election held by the entire
county. Where an election is held under the act by the
county, resulting in favor of restraining cattle from running
at large, such vote is binding on the county, and every pre-
cinct, township or other integral part thereof, for a period of
five years, without regard to whether such integral subdivision
voted for or against the law. In such case there is no power
in the county, or in any subdivision thereof, to call or hold
another election for the purpose of reconsidering the question
until after the expiration of five years. On the other hand,
if, at such county election, a majority of the votes cast are
in favor of stock running at large, or, in other words, are
against adopting the law, the county may, from year to year,
resubmit the question, until a majority vote is obtained in
favor of it. Moreover, the vote at any such county election
resulting in permitting stock to run at large, will only be
binding on such townships, precincts, etc., as vote that way.

In such case, notwithstanding the vote of the majority of the county is against enforcing the Stock law, it will, nevertheless, be in full force and effect in such towns, precincts, etc., as vote for its adoption.

Moreover, so long as the county votes against the law, or, in other words, in favor of stock running at large, any township or precinct may, under section 5, call an election for the purpose of submitting the question again to the voters thereof, and this may be done without regard to how such town or precinct voted at the county election; and if a majority of the votes cast at such election is against adopting the law, the question may be again, from year to year, resubmitted to the voters of such town or precinct until the law is adopted, after which such town or precinct can not resubmit it again until after the expiration of five years. If, however, in the meantime, a county election is legally called to vote upon the question, such town or precinct so adopting the law will have the same right to vote upon the question as any other town or precinct, notwithstanding five years may not have elapsed since such town or precinct election; and should its vote at such county election be again in favor of the law, its provisions will continue to be in force in such precinct or town, notwithstanding a majority of the county may have voted against it, while, on the other hand, if a majority of the county should have voted for the law, the same would, as we have already seen, have become operative in such town or precinct although a majority of the legal voters thereof may have voted the other way.

It will be thus seen that it was clearly the intention of the legislature to favor the adoption of the law, as far as it possibly could, without depriving the people of the right to vote upon the question altogether,—and so it was held in *Vogt* v. *Dunley et al.* 97 Ill. 424.

We see nothing in the act sustaining the view that a county, after having adopted township organization, and

some of the townships composing it have voted in favor of the law, is precluded from again submitting the question to a vote of the entire county. The very words of the act seem to authorize a vote by the county under just such a contingency. Nor can we give our sanction to the view that in such case the vote should be confined to such precincts or towns, etc., as have not, by a previous vote, adopted the law, whether such vote was more or less than five years before such county election. County election, by its very terms, implies an election at which every legal voter of the county has a right to vote, if he thinks proper to do so. It follows, therefore, that an election at which the voters of one or more precincts or townships of the county are excluded from voting, can not properly be considered a county election.

The judgment will be affirmed.

*Judgment affirmed.*