## James H. Lee et al.
## v.
## James C. Burk.

1. Trespass by cattle—Scienter.—Where the owner of domestic animals is guilty of a trespass in permitting or allowing such animals to enter his neighbor's close and do damage, he is chargeable with the cons·quential damages sustained by the plaintiff growing out of such trespass to his premises, whether the owner had or had not notice that the animals had a vicious propensity to do the particular act.

2. Trespass by Texas cattle—Communication thereby of fever—Scienter.—While a party may have the legal right to keep in his possession in this State, Texas or Cherokee cattle, yet if he *wrongfully* allows them to mingle with his neighbor's cattle and they thereby communicate fever to such cattle, he is answerable for all the damages, both direct and consequential, that result from their trespasses, and this without regard to his knowledge of their condition.

Appeal from the Circuit Court of Kankakee county; the Hon. Franklin Blades, Judge, presiding. Opinion filed January 16, 1885.

This action was commenced by appellants against the appellee, to recover damages for the loss of certain native cattle alleged to have died from Texas fever communicated to them by Texas or Cherokee cattle belonging to the appellee.

The declaration originally filed contained six counts, but a demurrer being sustained to all but the first and sixth counts, a trial was had upon those two alone.

A trial resulted in a verdict and judgment for the defendant below, and the plaintiffs bring the record here by appeal.

Mr. H. Loring, for appellant; cited R. S. 1883, Ch. 54, § 20; R. S. 1883, p. 136, §§ 5, 6, 7; Salzenstein v. Mavis, 91 Ill. 391.

Mr. T. P. Bonfield, for appellee; as to *scienter*, cited Keightlinger v. Egan, 65 Ill. 235; Wormley v. Gregg, 65 Ill. 257; Spray v. Ammerman, 66 Ill. 309; Hite v. Blandford, 45 Ill. 9; Saunders on Negligence, 92.

PILLSBURY, J.   The counts to which the demurrer was sus-
tained by the court below are substantially like the second and
third counts of the declaration in Salzenstein v. Mavis, 91 Ill.
392, under which it was held no recovery could be had.   This
case fully sustains the action of the court below in its judg-
ment upon the demurrer.

The first and sixth counts seek a recovery upon the ground
that the defendants, being in possession of Texas or Cherokee
cattle, and knowing they would impart disease to native cattle,
negligently allowed them to escape and enter the close of the
plaintiffs, and mingle with the native cattle of the plaintiffs
kept in said close, and that such native cattle died from disease
communicated to them by the said cattle of the defendants.

The evidence strongly tended to support these counts, but
the defendant denying the averment of the knowledge upon
his part that his cattle would impart disease to native cattle,
the plaintiff below, upon the trial, asked leave of the court to
strike out such allegation, but the court holding such aver-
ment essential to a recovery, disallowed the motion.

The court also instructed the jury for the defendant, that the
plaintiffs could not recover unless the *scienter* was shown by
the proof.

The only question we propose to notice is raised by this
ruling of the court.

By the common law every man was bound to keep his cattle
upon his own land at his peril, or respond in damages for their
trespasses; but in Seely v. Peters, 5 Gil. 130, this rule was
held inapplicable in our State, and the doctrine advanced that
owners of cattle had the right to permit them to run at large,
and that an owner of land was required to fence against them
or he could not recover damages for any injury committed
by them.   Section one of chapter eight of the Revised Statutes
of 1874, changes the rule declared in Seely v. Peters, by pro-
hibiting the running at large of cattle in the absence of a
vote of the people of the county allowing them to do so.

We think that the effect of this statute is to practically re-
enact the common law upon the subject, and that now in this
State, in any locality where no vote has been had, every man

must keep his cattle from his neighbor's premises, or respond in damages for injuries committed by them.

The policy of the law has been changed. Prior to this enactment first becoming a law, cattle were allowed to run at large by the general law, localities being empowered to prohibit them by municipal action; now, however, the prohibition is general with the power invested in certain political divisions of the State to adopt the former rule if it should be desired by the people.

In the present case the proof tends strongly to show that the Texas or Cherokee cattle of the appellee broke through the fence surrounding the premises of the appellants, where their native cattle were kept, and communicated to them Texas fever, so called, from which they died.

If the cattle of appellee thus entered the close of the appellants, they were trespassers in our view of the law, as there is no proof that cattle were by any local regulation allowed to run at large.

These cattle, then, being, as shown by the proof, wrongfully upon the premises of the appellants, the question is presented whether they can recover for the loss of their native cattle from the disease communicated by those of appellee without proving that the appellee had notice that his cattle would communicate such disease to native cattle; in other words, without proving the *scienter*.

As early as Anderson v. Buckton, Strange, 192, it was held, that the entry of diseased cattle into plaintiff's close, by which plaintiff's cattle were infected, was a trespass, and the injury to plaintiff's cattle could be alleged by the way of aggravation of damages in trespass, or recovered in a distinct action as consequential damages, and where also it is said " if a man enter and chase and kill my cattle, that is a distinct wrong, but yet may be joined as a matter of aggravation." In Ellis v. Loftus Iron Co., 10 C. P. L. R. 10, 11 Moak, 214, the action was brought to recover damages to plaintiff's mare caused by the defendant's negligence. It appears that a horse belonging to the defendant and the mare of the plaintiff were being depastured in adjoining fields, and the horse, by biting

and kicking the mare through the fence, committed the injury complained of, and it was shown that the horse did not cross the fence separating him from the mare. There was no evidence that the horse was of a vicious disposition, or had bitten or kicked any animal before, but on the contrary it was shown "that the horse was of as quiet a temper as you would wish a horse."

Upon these facts the court held the defendant liable on the ground that some portion of the horse, at least his mouth and feet, protruded over or through the fence, and therefore had committed a trespass in law, and the damages were not too remote, and judgment was rendered for the plaintiff for the injury to the mare. This action being brought for the consequential damages resulting from the trespass, is in accord with the case from Strange, *supra*, and is an authority that in such case the injury can be recovered in trespass *quare clausum fregit* as an aggravation of the damages, or as consequential damages arising from the tort, in an action on the case. Barnum v. Vandusen, 16 Conn., was a case where the defendant had certain sheep under his control, which, while trespassing upon the plaintiff's land, commingled with the plaintiff's sheep and communicated to them a dangerous disease, of which many of them died, and no sufficient justification being shown for the trespass, it was held, first, that evidence that the disease was communicated was admissible in aggravation of damages, and that the plaintiff could recover, in such action, for the loss of his sheep, as well as for the breach of his close, and second, that it was not necessary, in order to recover, for the plaintiff to prove that the defendant had knowledge that his sheep were diseased at the time they imparted disease to the sheep of plaintiff.

The case of Dolph v. Ferris, 7 W. & S. 366, was one where a bull of defendant broke into the inclosure of the plaintiff and gored the plaintiff's horse. The action was commenced before a justice of the peace, the claim being for damages, the plaintiff claiming " $75 for defendant's bull killing plaintiff's horse." The lower court took the view that the damages were only recoverable in an action on the case, of which the

Lee v. Burk.

justice had no jurisdiction in that State, and ordered judgment for the defendant. Upon appeal the court held, that as the justice of the peace had jurisdiction of an action of trespass *quare clausum fregit*, and the evidence showing that the bull in breaking and entering the close of plaintiff had committed a trespass for which its owner was liable, the loss of the horse could well be alleged as an aggravation of damages, and such course was preferable, as it settled the entire controversy in one suit instead of two, with half the trouble and expense, and the judgment was reversed.

In Beckwith v. Shoreditch and Hatch, Burr. 2092, the defendants with their guns and dogs entered plaintiff's close to hunt, and one of the dogs, without the knowledge of defendants, happened to escape from them and run into the paddock, and pulled down and killed one of plaintiff's deer. The court held that defendants were liable for the loss of the deer, without requiring the plaintiff to prove that the dog was accustomed to attack deer, and that the defendant knew it. This decision was based upon the ground that the defendants were themselves trespassers, and taking the dogs with them, they were liable for the damages done by the dogs, as well as for that committed by them upon the plaintiff's premises.

It would seem from these authorities, that where the owner of domestic animals is guilty of a trespass in permitting or allowing such animals to enter his neighbor's close and do damage, he is also chargeable with the consequential damages sustained by the plaintiff growing out of such trespass to his premises, whether the owner had or had not notice that the animals had a vicious propensity to do the particular act which resulted in such damage. And no good reason is perceived why this should not be so. A man owning cattle keeps them in his own inclosure, where he lawfully may, and is therefore guilty of no negligence; the duty of his neighbor is likewise to keep his cattle upon his own land at his peril, but instead of doing so, in violation of his duty allows or permits them to trespass upon his neighbor and mingle with his animals, and in consequence of some contagious disease with which they are infected, though unknown to him, they

communicate such disease to the cattle of his neighbor, of which they die.

There can be no sound reason for holding in such case that the plaintiff who has been guilty of no fault or wrong, should suffer the loss rather than the one who, by a failure to perform a duty imposed upon him by the law, has worked such mischief and loss to the plaintiff.

While under the opinion in the Salenstein case, *supra*, the defendant in this case may have had the legal right to bring into this State and have in his possession Texas or Cherokee cattle, he certainly can not claim the right, under that decision or the statute, to allow them to roam over and trespass upon appellant's close, with any greater immunity than if they were native cattle. Placing them upon the same footing as native cattle, he is equally responsible for their trespasses and for damages consequentially resulting therefrom, and alike required to keep them on his own premises.

If appellee had the legal right to keep in his possession such cattle in this State, then while keeping them where he *lawfully* might, he would not be liable for any injury caused by their communicating disease to the native cattle coming in contact with them (at least such would seem to be the holding of the court in the above case); yet this view is not in conflict with the rule we have announced, that if he *wrongfully* allow them to mingle with his neighbor's cattle and thereby communicate fever to them, he is answerable for all the damages, both direct and consequential, that results from their trespasses, and this without regard to his knowledge of their condition.

We therefore conclude there is error in the record, and the judgment will be reversed and the cause remanded, with leave to amend the pleadings if the parties shall be so advised.

*Judgment reversed.*