J. C. BULPIT

*v.*

T. J. MATTHEWS.

*Filed at Springfield, June 19, 1893.*

145 345
52a 262
145 345
57a 65
145 345
69a 339
145 345
e109a⁷272

1. ANIMALS—*domestic animals running at large—liability of owner for damages.* The owners of domestic animals, in this State, are required by law to keep them under control at their peril, so that no damage may be done by them to the property of another.

2. Stock at large, with or without the knowledge or consent of the owner, is unlawfully at large, unless by an affirmative vote the county, city or village, precinct or town has been excepted out of the general rule. And although stock escape from a good and sufficient enclosure, and stray upon the land of another and commit trespass, the owner will be liable for the damages resulting from the trespass. The owner of cattle must keep them off the lands of others, at his peril.

3. It is not necessary to fence against stock, and the owner thereof is liable in damages if it trespass upon the land of others, whether such land is enclosed or not, and irrespective of the reason or excuse for the animals being at large.

4. SAME—*common law rule.* By the common law every owner of cattle was bound to keep them from trespassing upon the close of another, at his peril, and was answerable for their trespasses as well as for his own.

5. SAME—*statute of 1874 construed.* Prior to the passage of the act of 1874, the territory in which domestic animals were prohibited from running at large, were exceptions out of the general rule. By this statute, the rule was abrogated and the general rule of law established, that animals could not lawfully be at large within the State, except within such political subdivision as the people, by an affirmative vote, had formally expressed their desire that such animals should be permitted to run at large. All other running at large of stock upon the highways or commons, or upon the land of others than the owner, without license, is made unlawful.

6. By construing the various provisions of the act of 1874, relating to animals, together, it is manifest that the legislature intended that only as the result of an election at which the question had been submitted under the provisions of that act, or some prior statute authorizing it, can domestic animals lawfully be at large within this State.

7. SAME—*action for penalty for permitting stock to run at large—intention.* In a proceeding under section 1 of the act relating to animals, to

346 BULPIT *v.* MATTHEWS.

Statement of the Case.    Brief for the Appellant.

enforce the statutory penalty, it will be necessary to show that the stock was at large by the permission or through the fault of the owner. To impose the penalty therein prescribed, some guilty intention to violate the law or willful neglect of the duty imposed must be shown.

APPEAL from the Appellate Court for the Third District; —heard in that court on appeal from the Circuit Court of Christian County; the Hon. J. FOUKE, Judge, presiding.

This was trespass, originally brought before a justice of the peace, to recover damages done by stock of appellant to the crops of appellee. On appeal to the Circuit Court, it was stipulated, that appellee's crops were uninclosed; that appellant kept his horses and mules, which did the damage, in a pasture enclosed by a good and sufficient fence to turn stock not breachy; that said stock was not breachy; that without fault, negligence or want of proper care on the part of appellant, the stock escaped from the pasture to an open common adjoining, and strayed upon appellee's fields, and damaged the growing crops thereon to the amount of $17.85. The Circuit Court found the defendant guilty, and rendered judgment for the damages accordingly. On appeal to the Appellate Court this judgment was affirmed, and that court having granted a certificate of importance under the statute, the defendant below prosecutes this further appeal.

Mr. JOHN G. DRENNAN and Mr. J. C. McBRIDE, for the appellant:

Accidents must be borne by those upon whom they fall. There is no more reason in making an owner of stock which escapes without his fault or negligence, mediate or immediate, and damages his neighbor, liable for such, than there would be in making one liable for damages done by his horse, without his fault or negligence, running away and injuring his neighbor's vehicle.

As to the duty of land owner to fence the same against his neighbor's stock, see *Seeley* v. *Peters*, 5 Gilm. 142;

R. S., ch. 54; R. S. 1874, ch. 8, secs. 1, 2, etc.; *Kinder* v. *Gillespie,* 63 Ill. 88; *Frederick* v. *White,* 73 Ill. 590; *Weider* v. *Theil,* 9 Bradw. 226; *O. & M. R. R. Co.* v. *Jones,* 63 Ill. 472.

Messrs. RICKS & CREIGHTON, for the appellee:

By the common law every man was bound to keep his cattle on his own land or respond in damages for their trespass, and it was one of the rules that no man was bound to fence his close, but every man is bound to keep his cattle in his own field at his peril. *See McCormick* v. *Tate,* 20 Ill. 334.

The owner (says Blackstone, 3d vol. 211,) is answerable for the trespass of his stock as of himself.

Is the common law in force in this State? If so, appellee should recover.

In *Seeley* v. *Peters,* the case so much relied upon by appellant, it was held that the common law was inapplicable to our then agricultural condition, but by the same course of reasoning we would now be forced to the opposite conclusion, because now vacant and unoccupied grazing lands have gone with the wolves. And whether the holding in that case was good law or not is immaterial, because our present statute requires every man to keep his cattle upon his own land, and thereby changes the law as held in *Seeley* v. *Peters,* and re-establishes the common law in this State.

Sec. 1, chap. 8, Starr & Curtis' Statutes, entitled: "Animals Running at Large," provides: "That whoever, being the owner or having possession of any domestic animal of the species of horse, mule, ass, cattle, sheep, goat or swine, shall suffer the same to run at large, except when authorized as hereinafter provided, shall be fined not less than $3 nor more than $10 for each offense." * * *

We insist that the above statute restores the common law, and it has been so held in *Lee* v. *Burk,* 15 App. 651; *Birkett* v. *Williams,* 30 App. 451, and in the case at bar.

Appellant insists that this suit is brought under section 20, chapter 24, of statute, and that said section requires land owners to fence their fields. This section of the statute has no application to the case at bar, but it applies to counties and towns in which the stock law is not in force, or in which cattle, etc., can lawfully roam at large. The stock law is in force in this State, and cattle, etc., can not lawfully roam at large, except in counties and towns where the people have, by a majority vote, permitted them so to do. Section 2, chapter 8, Starr & Curtis' Statute; and as to the manner of taking the vote, see sections 3, 4 and 5 of same chapter. To hold section 20, chapter 54, to be susceptible of the construction placed upon it by appellant, would be to hold that section 1 of chapter 8 is a dead letter on the statute book, while the construction we contend for gives full force and effect to each of these statutes, and is right.

Then, again, paragraph 8, of section 40, chapter 139, entitled: "Township Organization," empowers townships "to restrain, regulate or prohibit the running at large of cattle," etc., "unless the same are restrained from running at large in the same manner provided by law."

Under this power, townships in counties where cattle, etc., are permitted to roam at large generally have passed ordinances or by-laws restraining cattle, etc., from running at large in said township; and the courts, in passing upon this prohibitory ordinance or by-law, have held that the effect of the same was to restore the common law rule as to cattle, etc., running at large in such township, and that the owners of cattle, etc., trespassing therein were liable as at common law. *Westgate* v. *Carr*, 43 Ill. 454.

Mr. Justice Pillsbury, in *Lee* v. *Burk*, 15 App. 652, uses the following language: "Sec. 1, of chap. 8, of the Revised Statutes of 1874, changes the rule declared in *Seeley* v. *Peters*, by prohibiting the running at large of cattle, in the absence of a vote of the county allowing them to do so.

We think the effect of this statute is to practically re-enact the common law upon the subject, and that now in this State, in any locality where no vote has been had, every man must keep his cattle from his neighbor's premises, or respond in damages for injuries committed by them." And in *Birkett* v. *Williams,* 30 App. 453, substantially the same language is used by Mr. Justice Lacey in rendering the opinion of the court.

Appellant says that he did not suffer or permit his mules, etc., to run at large, and, therefore, is not liable, and cites *Kinder* v. *Gillespie,* 63 Ill. 88, and many other cases, to sustain his position. Upon an examination of the cases thus cited, the court will find in each instance that the suit was brought to recover the penalty or fine imposed by the statute or some city ordinance, in which cases knowledge or negligence on the part of owner of the cattle, etc., is necessary in order to sustain a conviction. Therefore these cases have no application to the case at bar.

Mr. Justice Shope delivered the opinion of the Court:

The propositions submitted to be held by the trial court as the law, and refused to be held, fairly present the question whether the owners of domestic animals in this State are required by law to so keep them under control that no damage is done by them to the property of another, at their peril. The Circuit Court, in effect, held, that it was not necessary to fence against stock, but that the owner thereof is liable in damages if it trespass upon the lands of others, whether such land is enclosed or not, and irrespective of the reason or excuse for the animals being at large. By the common law, every owner of cattle was bound to keep them from trespassing upon the close of another, at his peril, and was answerable for their trespasses as for his own. 3 Blk. Com., 211; 2 Waterman on Trespass, sec. 858; Cooley on Torts, 337.

By sec. 1, ch. 28, R. S. of this State: "The common law of England, so far as the same is applicable, and of a general nature, and all statutes or acts of the British parliament, made in aid of, and to supply the defects of the common law, prior to the fourth year of James the First" (with certain specified exceptions), "and which are of a general nature, and not local to that kingdom, shall be the rule of decision, and shall be considered as in full force, until repealed by legislative authority." This statute, without the exceptions, was passed by the general convention of the colony of Virginia, May, 1776, (9 Henning Stat. 127) and in its present form was carried into the legislation of the Indiana Territory, by the act of September 7th, 1807, (L. 1807, ch. 24) was in force in the territory of Illinois (1 Pope's Laws Ill. Ter., p. 34) and was re-enacted by the first State legislature, by act of February 4th, 1819, (L. 1819, p. 3) and has been retained in the same form in each succeeding revision of the statute.

The question, whether the rule of the common law mentioned was in force in this State, first came before this court, at its December term, 1848, in *Seeley* v. *Peters,* 5 Gilm. 130, and it was then held, by a divided court, never to have been in force. It was held, following the construction placed upon the statute adopting the common law, in *Boyer* v. *Sweet,* 3 Scam. 121, and *Penny* v. *Little,* id. 301, that the common law was adopted and in force, "only in cases where that law is applicable to the habits and condition of our society, and in harmony with the genius, spirit and objects of our institutions."

After showing the then unsettled condition of the vast prairies of the State, the scarcity of timber to fence them, and their capability to sustain thousands of cattle upon the natural grasses, the court said: "However well adapted the rule of the common law may be to a densely populated country like England, it is surely but illy adapted to a new country like ours;" and after showing the universal habit

at that time of enclosing fields devoted to agriculture, and permitting stock to run at large, further say: "We should feel inclined to hold, independent of any statute upon the subject, on account of the inapplicability of the common law rule to the condition and circumstances of our people, that it does not, and never has prevailed in Illinois."

But the court in that case distinctly placed its decision upon the ground that the legislature, by the enactment of various statutes relating to fences and enclosures, expressly recognized the right of owners of domestic animals to permit them to run at large, and had, as then held, required the proprietors of fields to surround them with a good and sufficient fence, before they could maintain an action for the trespass of stock therein. It followed necessarily, from the construction given to those statutes, that the common law rule was not in force.

In the subsequent cases of *Misner* v. *Lighthall*, 13 Ill. 609; *Chi. & Miss. R. R. Co.* v. *Patchin*, 16 id. 198; *McCormick* v. *Tate*, 20 id. 334, and other cases, the question was more or less directly presented, and the holding in *Seeley* v. *Peters* considered and approved.

The question was again directly presented in *Headen* v. *Rust*, 39 Ill. 186, determined at the December term, 1866, of this court,—the court there recognizing that the conditions which led the court to hold in 1848 the principle of the common law inapplicable, because of the physical and social conditions and habits of the people, no longer existed, the decision was placed upon the ground that the law, as declared in *Seeley* v. *Peters*, had been so long acquiesced in by the people, and the rule had been so long recognized by the legislature, in the passage of various acts consistent with the holding in that case, that it belonged to the legislative department of government, more properly than the judiciary, to change it. And after reviewing various of such acts, it was said: "This legislation establishes the fact that the General Assembly,

and the people of the State, understand the law to require owners of land to fence against the depredations of stock, and that all persons have a right to permit their cattle to run at large on the highways and commons, except so far as they are prohibited by legislative enactment. * * * The conclusion from these enactments seems irresistible, that the people have accepted the rule in *Seeley* v. *Peters* as the law, and have manifested no disposition to disturb it, except in particular localities." A review of the legislation referred to, or the subsequent enactments, prior to the acts of 1871–2, relating to fences and enclosures and regulating the right of stock to run at large in certain municipalities and political subdivisions of the State, will be unnecessary.

It will be found that they recognize the law to be as held in the cases mentioned, and that acts of the legislature authorizing the restraining of domestic animals from running at large in such municipalities and subdivisions, formed exceptions to the general rule and policy of the State.

By the statute now in force (chapter 8, R. S., passed in 1874, which is, in effect, sections 1 and 2, of the act of 1871–2, re-written), a radical change was made. Of the causes producing the rapid development of the State nothing need be said, but it is a matter of common knowledge that at the time of the passage of the present statute, and long prior to that date, if there was vacant land upon which cattle at large might graze, it was not, as a rule, to be found upon the prairies, but in the poorer and timbered portions of the State, and there only in comparatively small and constantly decreasing quantities. The conditions and circumstances of the country and people had radically changed since the decision of the *Seeley* v. *Peters* case, and the reasons for rejecting the rule of the common law, so far as its exclusion was based upon the physical condition of the State, and the needs and habits of the people, had ceased to exist.

It can not be doubted that it was in view of these changed conditions, and it may be presumed in view of the holding in *Headen* v. *Rust,* that the legislation of 1874 upon the subject was enacted.

Section 1, of the act of 1874, imposes a penalty upon any person suffering or permitting domestic animals to run at large within the State, except when authorized as in that act provided. Section 2 provides for submitting the question of permitting animals to run at large to a vote of the electors of the county. Section 3 relates to the form of the ballot, manner of voting, and canvassing and return of the votes. Section 4 provides: "If a majority of all votes cast in the county at such election shall be for domestic animals, or any species thereof, running at large, it shall be lawful in such county for domestic animals, or such species thereof, to run at large; provided, that if at any such election the vote in any precinct in counties not under township organization, or in any town in counties under township organization, or in any incorporated city, village or town, in any county, shall be against domestic animals, or any species thereof, running at large, it shall not be lawful for such animals to run at large in such precinct, or town, or incorporated city, village or town." Section 5 provides, that in any county wherein animals are allowed to run at large, pursuant to a vote theretofore had, on petition, etc., being filed with the county clerk, a vote may be taken in any incorporated city or village, precinct or town, under the act, and if a majority of the votes cast shall be against animals running at large, then it shall not be lawful for them to run at large in such city, village, precinct or town. Section 6 provides, that the act shall not be so construed as to prohibit the running at large of domestic animals in any county, precinct or town, incorporated city or village, "where the same is allowed pursuant to any election held by virtue of any law in force at the time this act shall take affect." *Vogt* v. *Dunley,* 97 Ill. 424.

Construing these provisions together, it is manifest, we think, that the legislature intended that only as the result of an election, at which the question had been submitted under the provisions of this, or some prior statute authorizing it, can domestic animals lawfully be at large within this State. Prior to the passage of this law, as we have seen, the territory in which they were prohibited from running at large, were exceptions out of the general rule. By this statute that rule was abrogated, and the general rule of law established that animals could not lawfully be at large within the State, except within political subdivisions in which the people, by an affirmative vote, had formally expressed their desire that such animals should be permitted to run at large. All other running at large of stock upon the highways or commons, or upon the land of others than the owner, without license, is made unlawful.

Undoubtedly, as suggested, in proceeding under the first section of the act, it will be necessary to show that the stock was at large by the permission or through the fault of the owner. To impose the penalty therein prescribed, some guilty intention to violate the law, or willful neglect of the duty imposed must be shown. *Case* v. *Hall,* 21 Ill. 632; *Kinder* v. *Gillespie,* 63 id. 88. But this does not affect the question being considered.

The stock at large, with or without the knowledge or consent of the owner, is unlawfully and wrongfully at large, unless by an affirmative vote the county, city or village, precinct or town, has been excepted out of the general rule and policy of the State. It is thus seen that every reason assigned in former decisions, for the exclusion of the common law rule, has ceased to exist. The effect of the act of 1874 was to remove every impediment found by the court to exist in *Headen* v. *Rust, supra,* to the adoption of the common law rule in this State. If the principle of the common law, requiring the owner of cattle to keep them on his own land at his peril, which is based upon that

other principle lying at the foundation of the right to possess and enjoy property in civilized society—"that each shall so use his own as not to inflict injury upon another,"—was in conflict with the legislation of the State, or opposed to its legislative policy, prior to the act of 1874, it can not be said to be in conflict with or opposed to the policy of that law which makes the running at large of stock unlawful.. The principle of the common law is in harmony with existing statutes, and, as we have seen, applicable to the habits, circumstances and conditions of the people.   It is fairly to be presumed that this legislation was induced by the changed conditions and circumstances.   The court had, just previously to the passage of the present law, which is sections 1 and 2, of the act of 1871–2, re-written, while recognizing this change in the physical conditions of the State and the habits of its people, declined to recede from the doctrine of *Seeley* v. *Peters*, because of the legislative policy of the State.   And finding, as we do, that the legislature, by the act, removed the impediment to the adoption of the common law principle, found in *Headen* v. *Rust* to exist, it is to be presumed that the purpose was to render the principle applicable. We are of opinion the effect has been, that by virtue of the statute adopting the common law, this principle has become the rule of decision in this State.

   That this was the intention of the legislature is, we think, further evinced by cotemporaneous legislation.   At the same session of the legislature, sec. 20, of ch. 54 (Fences), was passed in lieu of sec. 15, of ch. 31, of the Revised Statutes of 1845.   After re-enacting, in  substance, the original section, providing for the recovery of damages done by domestic animals breaking into enclosures, the fence being good and sufficient, there was added: "This section shall not be construed to require such fence in order to maintain an action for injuries done by animals running at large contrary to law."   And sec. 21, of the same chap-

ter, was also added, which provides that if any such animal shall break into an enclosure, etc., ''or shall be wrongfully upon the premises of another,'' the owner or occupant of such premises may take and keep such animal until damages, with reasonable charges for keeping, are paid, etc. The provisions clearly contemplate, that animals may be running at large contrary to law, and wrongfully upon the land of another irrespective of whether enclosed or not. In the case of *Lee* v. *Burk*, 15 App. Rep. 651, it was held, as early as 1884, that the effect of the act of 1874 was the practical re-enactment of the common law principle, and that since the passage of that act, in any locality where domestic animals are not permitted by a vote, taken under the statute, to run at large, ''every man must keep his cattle from his neighbor's premises, or respond in damages for injuries committed by them.'' The same rule is announced in *Birkett* v. *Williams*, 30 App. Rep. 451. Neither of these cases came to this court, and the conclusion there reached would seem to have been acquiesced in by the bar and people of the State. The question is for the first time presented to this court, since the passage of the present laws relating to domestic animals, and we are of opinion, that the common law rule has, since the passage of that act, been in force in this State, and that the courts below have, therefore, decided correctly. Other errors are assigned, but, in view of the holding, become wholly unimportant, and need not be considered. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE BAILEY, dissenting.