## Daniel Selover v. D. L. Osgood.

1. STOCK—*Running at Large—The American Law Rule.*—The common law rule requiring the owner of cattle to keep them upon his own premises is in force in this State except in counties or towns where the people by affirmative vote, authorized by our statute to be taken, have decided to let stock run at large.

2. STOCK—*Running at Large Under the Statute of Division Fences.*—The statute requiring the construction of partition fences by adjoining land owners abrogated the common law rule that no man is required to fence his land against the cattle of others, as to the owners of inclosed adjoining fields, and cast upon such owners the burden and duty of erecting and maintaining a just proportion of the fence separating their estates.

3. STOCK—*Every Man Answerable for Trespasses at Common Law.*—The common law rule that every man should be answerable for the trespasses of his stock rested upon that other rule of the common law that no man was required to fence or inclose his land against the stock of another.

4. STOCK— *The Common Law Rule That Every Owner Should Keep His Stock on His Own Premises Abrogated.*—With the abrogation of the common law rule, that every man is answerable for the trespasses of his cattle, fell also, as to adjoining owners, that other common law rule that rested upon it, that every man shall keep his stock on his own premises at his peril.

5. STOCK—*Rights of Adjoining Land Owners.*—After the establishment of a partition fence under the statute each owner is required to rely for the safety of his property against the animals of the adjoining owner upon the partition fence required by law to be maintained.

6. PARTITION FENCE—*Maintained by Joint Expense.*—If adjoining owners keep up the whole line of division fence by a joint expenditure of labor or money, neither can recover damages for the trespasses of stock from the other on the ground that the fence was not good and suf-

Selover v. Osgood.

ficient, because the default was not that of one more than the other. Under such an arrangement each is responsible for all parts of such a fence.

7. TRESPASSES OF CATTLE—*Adjoining Owners—Burden of Proof.*— In order to recover for trespasses occasioned by stock passing through a division fence, certain portions of which are to be kept up by each proprietor, the injured party is required to show either that the stock passed through that portion of the fence which it was the duty of the other land owner to maintain and which duty was omitted or neglected, or that the stock passed through his own portion of the fence at a point where such fence was good and sufficient to turn stock.

**Memorandum.**—Action for trespass begun before a justice of the peace and appealed to the Circuit Court of Hancock County, and appealed therefrom; the Hon. CHARLES J. SCOFIELD, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed October 28, 1893.

The opinion states the case.

FRANK HALBOWER and MANIER, MILLER & WILLIAMS, attorneys for the appellant.

O'HARA, SCOFIELD & HARTZELL, and D. MACK & SON, attorneys for appellee.

MR. PRESIDING JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

This was an action begun before a justice of the peace by the appellant, to recover for damages done to his hay and pasture lands by cattle belonging to the appellee. It came into the Circuit Court by appeal and was there determined adversely to the appellant. Hence this appeal. Cattle belonging to the appellee, passed through a hedge fence which divided adjoining premises of the parties, consumed a stack of hay belonging to appellant, and injured and damaged his meadow and pasture. This much was proven beyond dispute, and indeed is, as we understand, conceded by the appellee.

The appellant insists that the law is as at the common law, that the appellee was required to keep his cattle on his own premises or be answerable for their trespasses, and that therefore, under the undisputed facts of the case, he should

have recovered. That the common law rule referred to is in force, except in counties or towns where the people by an affirmative vote, authorized by our statute to be taken, have decided that stock should run at large, and except under certain other circumstances, which we shall hereafter more fully refer to, is undisputed. We so expressly held in the case of Bulpit v. Matthews, 42 App. 561, which holding has been affirmed by our Supreme Court in the same case on appeal. (145 Ill. 345.) Our General Assembly in 1857, by an enactment, which will be found on page 159 of the Session Laws of that year, and which by re-enactment is now in force, required the owners of adjoining premises to make and maintain a just proportion of the division fence between their lands unless one of them should choose to let his lands lie open. The common law rule that every man was answerable for the trespasses of his stock rested upon that other rule of the common law that no man was required to fence or inclose his land against stock.

The statute requiring the construction of partition fences by adjoining land owners abrogated the last mentioned common law rule as to the owners of inclosed adjoining fields, and cast upon such owners the burden and duty of erecting and maintaining a just proportion of the fence separating the premises. With the abrogation of that rule fell also as to such adjoining owners the other common law rule that rested upon it, that every man should keep his stock on his own premises at his peril, for the obvious reason that as to such adjoining premises the law required the land owner to maintain a good and sufficient fence to protect their premises against stock which might be in the adjoining field. The duties, obligation and rights of such adjoining owners must be determined under the statute if they have a partition fence. After the establishment of a partition fence, under the statute each owner was required to rely for the safety of his property against the animals of the adjoining owner upon the partition fence required by law to be maintained. If such owners keep up the whole line of division fence by a joint expenditure of labor or money, neither can

recover damages for the trespasses of stock from the other on the ground that the fence was not good and sufficient, because the default was not that of one more than the other. Each is responsible for all parts of such a fence.

In order to recover for trespasses occasioned by stock passing through a division fence, certain portions of which are to be kept up by each proprietor, the injured party is required to show either that the stock passed through that portion of the fence which it was the duty of the other land owner to maintain, and which duty was omitted or neglected, or that the stock passed through his own portion of the fence at a point where such fence was good and sufficient to turn stock even to some extent unruly.

In support of the views thus announced consult McCormick v. Tate, 20 Ill. 334; D'Arcy v. Miller, 86 Ill. 102. In the case at bar there were no written pleadings and we can not know upon what ground or claim of right the appellant asserted a right to recover except as we may be informed by the facts he sought to establish by the proofs introduced by him.

We know the parties hereto occupied adjoining inclosed lands, and that the statute required each of them to maintain a just proportion of the fence separating their fields. We know that unless each party was maintaining certain separate portions of the fence and not responsible for the entire line thereof, neither could recover against the other for damages attributable to the insufficiency of the fence.

If each proprietor was maintaining distinct portions of the fence then we know that the appellants might recover by showing (1st) that the cattle passed through that portion of the fence assigned to him to maintain, and that it was then and there a good and sufficient fence, or (2d) that the animals passed through that portion of the fence which it was the duty of the other proprietor to maintain, and that the fence there was not good and sufficient. Except upon one or the other of these grounds the appellant could have no right of recovery.

Knowing this much, we may as readily determine his

cause and ground of action from the evidence produced in his behalf as we could from the declaration, had he instituted his action in a court of record and formally set out his complaint.

He appeared first as a witness in his own behalf.

After stating that the cattle got upon his premises by breaking through a hedge fence separating his pasture from the field of the appellee and destroyed a ton of hay and damaged his meadow by trampling it while the ground was wet, he proceeded to state that the hedge which composed the fence had grown up thick and strong and thrown out branches and bushes, so that cattle could not get near to or through it; that it was a good fence, the only good fence along the line of division fence. His counsel asked him to " describe the fence as to its sufficiency to turn stock at the place where the cattle got in." His reply was, " they broke out green hedges to get through; one place looked like they had been run through. I say the fence was perfectly safe where they broke through," etc., etc. Six witnesses were introduced in his behalf, of whom five testified solely as to the character and sufficiency of the hedge as a fence, and the other witness testified that cattle had been kept safely in the field by the hedge. This was the case presented to the jury by the appellant. Beyond doubt he based his right of action and his cause upon the theory that the cattle had passed through that portion of the fence which he was to maintain, and that it was a good and sufficient fence to turn such stock. The appellee did not attempt to deny that his cattle went through the fence onto the lands of the appellant, nor that they inflicted injury and damage to appellant's hay and pasture, but he met the case made by the plaintiff as to the sufficiency of the fence—that is, contended that the appellant did not have his portion of the partition fence sufficiently good and strong to turn the cattle. The appellee produced a number of witnesses who testified as to the character of fence made by the hedge.

This was the case and the issue that was submitted to the jury, who returned a verdict for the appellee. The evidence

was conflicting as to the questions of fact in issue; the burden was upon appellant; the instructions given by the court as to the law were orally pronounced and not preserved in the record and not objected to, and therefore the verdict of the jury must be accepted as a final determination of the controversy.

The judgment is affirmed.