## Adlore Mailloux, Plaintiff in Error, v. Cleveland, Cincin= nati, Chicago & St. Louis Railway Company, Defendant in Error.

## Gen. No. 5463.

1. ANIMALS—*effect of trespassing.* By the common law and under the law of this state, every owner of cattle or horses is bound to keep them from trespassing upon the close of another at his peril and is answerable for trespasses as for his own.

2. ANIMALS—*what essential to establish liability for injury.* If horses are unlawfully and wrongfully at large no redress can be had for injury to them unless caused by the malice or negligence of another.

Action in case. Error to the Circuit Court of Kankakee county; the HON. C. B. CAMPBELL, Judge, presiding. Heard in this court at the April term, 1911. Affirmed. Opinion filed October 13, 1911.

W. G. Brooks and H. K. & H. H. Wheeler, for plaintiff in error.

Hunter & Schneider, for defendant in error.

Mr. Justice Willis delivered the opinion of the court.

On the 2nd day of February, 1908, Adlore Mailloux, of the village of St. Anne, in Kankakee county, plaintiff in error herein, was the owner of a number of young stallions, which he had purchased shortly before in Wenona, Illinois, and which had been brought to St. Anne on the first day of February. These horses, twelve in number, were placed by the owner in a lot 75 feet by 300 in the village of St. Anne. This lot was enclosed by a fence of woven wire six or seven feet high, with twelve-inch plank, two inches thick, above and below the wire on the inside of the posts, which were either big ties or maple trees. The gate leading into this lot was about six feet long and practically of solid boards with woven wire on the inside of it and cross pieces from top to bottom to strengthen it. Some time during the night of February 2nd or early in the morning of February 3rd, these horses broke down this fence, letting themselves into another lot of about one acre, and from there through a gate and a barn yard to the highway. From there these horses travelled east along the highway and through a gate into a lot or field along side the right of way of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. From this field a gate opened on to the highway at the corner near the railroad right of way. Shortly after six o'clock on the morning of February 3, 1908, these horses left this last mentioned field, through the gate, and went onto and across the right of way of the railroad, when one of them was struck and killed by a south-bound passenger train of the railroad named.

The owner brought this suit against the railroad company to recover damages for the killing of the animal. There was a jury trial and a verdict of not guilty, and plaintiff below prosecutes this writ of error to review that verdict and the judgment entered thereon.

The declaration contained five counts. The first count charged that the horse was struck and killed by the negligence and improper conduct of the servants of defendant in error in carelessly and improperly driving and managing the locomotive and train of cars. The second count charged that the servants of defendant in error did not keep a proper look out at said crossing and by reason thereof the horse was killed. The third count charged that said servants of defendant in error drove said engine upon said horse wilfully and maliciously, intending to destroy the horse. The fourth count charged that the servants of defendant in error knew that a herd of horses belonging to appellant was on the crossing, one-half mile before said engine reached the crossing, but did not slacken speed. The fifth count charged that said servants well knew of the presence of said horses on the highway and on the crossing and it became their duty to slacken speed and avoid injuring the horses, but that they so improperly managed and operated said train and engine that said horse was killed. The defendant below pleaded the general issue.

This accident occurred on the morning of February 3, 1908, at about 6:25 A. M., which was before sunrise. The morning was clear but gray, and there was enough snow on the ground to enable the tracks of the horses to be seen. This train, operated by engineer Lanahan and fireman Mills, left Kankakee at six o'clock that morning and had stopped at two stations before striking this horse. The engineer testified that, after leaving the station at St. Anne and before striking the horse, or rather, before reaching the highway crossing

where the horse was struck, the headlight was lighted, the automatic bell was ringing and he had whistled for this crossing. The fireman was busily engaged in breaking coal and shovelling it into the furnace and neither of the engine crew knew that anything had been struck by their train until they reached Lafayette, Indiana, and found the cowcatcher partly broken and blood thereon. Just as the engine got to this crossing the engineer did see two horses near the engine and the pilot of the engine struck the tail of one of these horses, but it got off the path of the train all right. The horses were coming from the east and going west. The train was going southeast and the engineer was riding on the right hand, or west side of the engine, so that he could not see whether there were any other horses approaching the crossing or not. The fireman, being down on the deck of the engine shovelling coal, was not in a position to see the horses at all. The engineer testified that he was kept busy with the operation of the engine and with looking ahead along the track on his side of the engine; that, on a cold morning like the one in question, considerable steam arose around the front end of the engine from the steam chest and interfered with a clear vision of things ahead; and that he only saw two horses on that crossing and it was no use to stop after he saw them, obviously because they were safely off the track and because the speed of the train was such that the train could not then be stopped before the highway was reached.

There was only one eye witness to the killing of this horse and his evidence is quite contradictory. But we judge, from his evidence, which we have considered in full in the record, that these twelve horses left the field east of the right of way on a sharp trot just before this train reached the crossing, coming out of the field by a gate close to the right of way and went at once on the track, and that two of them had crossed over the track

before the train got to them. The lot, in which they had been placed by the owner the afternoon before, was about two miles from the crossing of the highway and railroad track where one of them was struck. The several gates through which they passed were found to be open during the afternoon of February 3rd, and at least some of them must have been open all night to allow of the passage of these horses, for none of them were found broken in any way. These horses were stallions, large, powerful horses, and this was the first night they had spent in that lot. They evidently became uneasy at their strange surroundings, attacked the fence in an attempt to get out, found it not strong enough to resist them, went through it and then roamed at will, through open gates and on the highway, until one of them was killed by this train. We find no proof in this record to go to the jury under the third, fourth or fifth counts. These charged that the servants of defendant in error wilfully and maliciously intended to destroy this horse, or that, well knowing that this horse was upon the crossing, they did not slacken speed or properly manage the train, as in duty bound. There is no evidence in the record to show that the engine crew knew that there were any horses at or near this highway crossing nor that they were in any way negligent in their manner of operating the engine and train. The burden was upon the plaintiff below to prove negligence on the part of the defendant below or its servants and we find nothing in the record to make a case for plaintiff. As far as the first and second counts are concerned, we do not find that plaintiff in error has succeeded in proving any negligence or improper conduct on the part of the railroad company. It seems to be the theory of plaintiff in error that there should always be two men on an engine looking out ahead, one on each side thereof, and that the fact that the fireman of this engine was required by his duties to spend part of his time down on the deck of the engine, shovelling coal in-

to the fire-box, and that he happened to be doing this work when this crossing was reached, constituted negligence on the part of the railroad company. We cannot agree with plaintiff in error, for we can find nothing negligent in the management of this train or locomotive. By the common law, every owner of cattle, or horses, was bound to keep them from trespassing upon the close of another, at his peril, and was answerable for their trespasses as for his own. Bulpit v. Matthews, 145 Ill. 345. It follows that if such cattle, or horses, were injured while so at large through no fault of another, the owner thereof would have no redress. Under the rules laid down in the case just cited, it is evident that these horses were unlawfully and wrongfully at large and that the owner has no redress for any injury to them, unless caused by the malice or negligence of another. We can find no evidence in this record by which to impute any negligence or malice to the conduct of the servants of defendant in error. The statutory requirements, for a train approaching a crossing, were obeyed, and we are of opinion that no blame can rest upon the engine crew.

Plaintiff in error complains of the refusal of four instructions, requested by him, and the modification of another. The refused instructions were faulty, in undertaking to tell they jury that certain things constituted negligence. Plaintiff in error also complains of certain instructions, given at the request of defendant in error, but even if they were not wholly correct, we do not deem the giving of them to be ground for reversal, as we are of opinion that a verdict for plaintiff in error could not have been sustained upon the evidence.

We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*