# Illinois Official Reports

## Supreme Court

---

**Raab v. Frank**, 2019 IL 124641

---

| | |
|---|---|
| Caption in Supreme Court: | KIRK RAAB v. KENNETH FRANK, Appellee (David A. Grossen *et al.*, Appellants). |
| Docket No. | 124641 |
| Filed | November 21, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Jo Daviess County, the Hon. William A. Kelly, Judge, presiding. |
| Judgment | Appellate court judgment affirmed in part and reversed in part. Circuit court judgment affirmed. |
| Counsel on Appeal | Stephanie R. Fueger and McKenzie R. Blau, of O'Connor & Thomas, P.C., of Dubuque, Iowa, for appellants.<br><br>Timothy B. Zollinger and Lucas M. Brainerd, of Ward, Murray, Pace & Johnson, P.C., of Sterling, for appellee. |

Justices

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Burke and Justices Thomas, Kilbride, Karmeier, Theis, and Neville concurred in the judgment and opinion.

**OPINION**

¶ 1      Plaintiff Kirk Raab sued defendant Kenneth Frank in the circuit court of Jo Daviess County for violations of the Illinois Domestic Animals Running at Large Act (Animals Running Act) (510 ILCS 55/1 (West 2010)), seeking damages for injuries sustained when his vehicle collided with a cow owned by Frank that escaped its confining fence and wandered onto the highway. Frank filed a third-party complaint against the owners of the neighboring parcel of land, David and Virginia Grossen, seeking contribution pursuant to the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/2 (West 2010)) based on negligence, breach of duty under the Fence Act (765 ILCS 130/3 (West 2010)), and breach of contract. Frank and Raab reached a settlement, and Raab's claim against Frank was subsequently dismissed with prejudice. The Grossens then filed a motion for summary judgment (735 ILCS 5/2-1005 (West 2012)) on all claims against them. The circuit court granted the Grossens' motion for summary judgment on the negligence and Fence Act claims. After initially denying summary judgment on the breach of contract claim, the circuit court ultimately dismissed that claim as well, accepting the Grossens' argument that they owed no duty to Raab under the contract.

¶ 2      The appellate court affirmed the dismissal of the Fence Act claim and reversed the circuit court's grant of summary judgment on both the negligence claim and the breach of contract claim. 2019 IL App (2d) 171040. The Grossens then filed a petition for leave to appeal, which we allowed pursuant to Illinois Supreme Court Rule 315 (eff. July 1, 2018).

¶ 3                    BACKGROUND

¶ 4      The Grossens are owners of a parcel of real estate (Parcel A) in rural Jo Daviess County adjacent to a parcel leased by Kenneth Frank (Parcel B). Virginia Grossen inherited Parcel A from her mother in 2005 and executed a quitclaim deed to convey the property to herself and her husband jointly in 2006. The Grossens do not live on this parcel. A common fence runs between Frank's and the Grossens' parcels.

¶ 5      Frank uses Parcel B for pasturing cattle and has done so since 2009. The terms of Frank's oral lease provide that he is responsible for maintaining the fences on the parcel. Upon renting the property, Frank inspected the fencing on Parcel B to ensure that it was suitable for containing cattle. Frank also learned of a signed agreement between the prior owners of Parcels A and B regarding fence maintenance responsibilities. Prior to 2011, the Grossens were not aware of this agreement or that Frank was using Parcel B to pasture cattle.[1]

¶ 6      Since renting, Frank has inspected the fence every Sunday. In July 2009, July 2010, and July 2011, heavy rainstorms damaged portions of the common fence between Parcels A and

---

[1]The record does not reveal how the Grossens became aware of the fence agreement.

B, necessitating repairs. Following each storm, Frank repaired the damaged fence. He did not enlist the Grossens' aid in the repairs or contact them to notify them of any damage. Frank believed each of his repairs was adequate for containing his livestock.

¶ 7    In November 2011, Frank's cattle escaped his parcel and entered onto a nearby road. Raab was driving on the road and collided with one of Frank's cattle.

¶ 8    In November 2013, Raab filed a one-count lawsuit against Frank for personal injuries suffered in the collision. Raab contended that Frank had failed to use reasonable care to restrain his livestock, in violation of the Animals Running Act.

¶ 9    In August 2014, Frank filed a three-count, third-party complaint against the Grossens, seeking contribution under the Contribution Act based on theories of breach of duty under the Fence Act, negligence, and breach of contract. Frank alleged that the cow that injured Raab escaped through a portion of fence the Grossens were obligated to maintain. The parties do not dispute that the alleged exit location is the Grossens' responsibility under the contract.

¶ 10   In June 2016, the circuit court approved a $225,000 settlement agreement between Raab and Frank. Subsequently, the Grossens moved for summary judgment on all counts of Frank's third-party complaint. The Grossens argued that the negligence count was barred by the Animals Running Act, no duty arose under the Fence Act, and the contract claim was barred because the fence agreement did not run with the land.

¶ 11   In September 2016, in partially granting the Grossens' motion for summary judgment, the circuit court determined that the Animals Running Act barred any contribution from nonowners or nonkeepers of livestock and granted summary judgment on the Fence Act due to Frank's failure to notify the Grossens of any known deficiencies in the fence. See 765 ILCS 130/11 (West 2010) (a party must give 10 days' notice that reparation of an adjoining fence is necessary prior to undertaking repairs on his own in order to hold nonrepairing party liable for damages). The court denied the Grossens summary judgment as to the breach of contract count, however, finding that the fence agreement indeed ran with the land.

¶ 12   In August 2017, the Grossens filed a second motion for summary judgment, arguing that, under the Contribution Act, the basis for a contributor's responsibility to share in the payment of damages is his liability in tort to the injured party. The circuit court held that a breach of the fence contract could not create that liability in tort to Raab. Therefore, following the dismissal of Frank's other third-party claims, the contract could not be the sole basis for contribution. The court thus dismissed the final surviving claim against the Grossens. Frank filed a timely notice of appeal.

¶ 13   On appeal, Frank argued that the circuit court erred in granting the Grossens summary judgment on each of the counts of his complaint. Reasserting his initial arguments, Frank contended that a basis for contribution lies in either the Animals Running Act, the Fence Act, or the fence agreement signed by the parties' predecessors in interest.

¶ 14   The appellate court reversed the circuit court's grant of summary judgment as to the Animals Running Act, holding that Raab's inability to pursue an action against the Grossens as nonowners of cattle under that act had no bearing on Frank's ability to seek contribution from the Grossens under the Contribution Act. 2019 IL App (2d) 171040, ¶ 29. The appellate court affirmed the circuit court's ruling on the Fence Act, holding summary judgment proper due to Frank's failure to provide the Grossens notice of known fence defects. *Id.* ¶ 34. Finally, the court reversed summary judgment on Frank's breach of contract claim, holding that,

although the Grossens were not liable in tort, the fence agreement established a relationship between the parties such that contribution would be equitable. *Id.* ¶ 43.

¶ 15    This court granted the Grossens' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2018).

¶ 16    ANALYSIS

¶ 17    The first issue before this court is whether a party may bring an action against nonowners or nonkeepers of livestock belonging to neighboring landowners pursuant to the Contribution Act, based on breach of a duty at common law. The second issue is whether the Animals Running Act immunizes nonowners and nonkeepers from potential common-law liability. Finally, we consider whether a breach of contract creates "liability in tort" or otherwise serves as the basis for a contribution claim under the Contribution Act.

¶ 18    The fundamental goal of statutory construction is to ascertain and give effect to the intent of the legislature. *LaSalle Bank National Ass'n v. Cypress Creek 1, LP*, 242 Ill. 2d 231, 237 (2011). The best indicator of that intent is the plain language of the statute, given its ordinary meaning. *Wisniewski v. Kownacki*, 221 Ill. 2d 453, 460 (2006). Where the language is clear and unambiguous, we will apply it as written. Only where the language is ambiguous do we turn to extrinsic sources to determine legislative intent. *Id.* Questions of statutory construction are questions of law and reviewed *de novo*. *People v. Perry*, 224 Ill. 2d 312, 324 (2007).

¶ 19    The Contribution Act

¶ 20    We turn first to the Contribution Act, which provides redress for a joint tortfeasor to seek contribution against fellow joint tortfeasors who have not paid their *pro rata* share of the common liability. 740 ILCS 100/2 (West 2010).

¶ 21    The Contribution Act provides, in part:

> "Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." *Id.* § 2(a).

The basis for a contributor's obligation rests on his liability in tort to the injured party. *J.I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc.*, 118 Ill. 2d 447, 462 (1987). In the contribution context, liability in tort has been interpreted to mean "potential" tort liability, determined at the time of the injury to the initial plaintiff. *Doyle v. Rhodes*, 101 Ill. 2d 1, 10-11 (1984). Potential for tort liability exists until a defense is established. *Id.* If the underlying claim does not create liability in tort, a third-party plaintiff may not recover on a contribution claim. *People v. Brockman*, 143 Ill. 2d 351, 372 (1991).

¶ 22    Frank's complaint alleges liability in tort under the common law or alternatively under breach of contract. We must therefore determine whether the Grossens are potentially liable under either basis.

## I. Negligence

### A. Common Law

Frank first argues that common-law negligence provides a basis for potential tort liability. He contends that, rather than being the source of liability for livestock owners and keepers for estray[2] damage, the Animals Running Act merely operates as an immunity or affirmative defense to nonowners and nonkeepers. As such, he posits that the statute shields the Grossens from liability to Raab but not from the "potential tort liability" necessary for third-party contribution.

None of Frank's cited case law supports the proposition of common-law liability for nonowners or nonkeepers of livestock. First, Frank cites *Bulpit v. Matthews*, 145 Ill. 345 (1893), where the plaintiff sued to recover damages to his crops inflicted by Matthews's escaped livestock. In explaining the motives and circumstances that led to the enactment of the Animals Running Act, this court stated, " '[h]owever well adapted the rule of common law may be to a densely populated country like England, it is surely but illy adapted to a new country like ours' "; " 'it does not, and never has prevailed in Illinois.' " *Id.* at 350-51 (quoting *Seeley v. Peters*, 10 Ill. 130, 142 (1848)); see also *Boyer v. Sweet*, 4 Ill. 120 (1841). Upon examining the Illinois statutes in place that expressly allowed the owners of domestic animals to permit them to run at large, the court surmised "[i]t followed *** that the common law rule was not in force." *Bulpit*, 145 Ill. at 351. The *Bulpit* court further stated that "[p]rior to the passage of [the Animals Running Act], as we have seen, the territory in which [animals] were prohibited from running at large, were exceptions out of the general rule." *Id.* at 354.

Despite Frank's assertion that the case proves the existence of a common-law cause of action for estray damage, the *Bulpit* court actually held that the *English* common-law rule, mandating that " 'every man must keep his cattle from his neighbor's premises' " "has, *since the passage of the [Animals Running Act]* been in force in this State." (Emphasis added.) *Id.* at 356 (quoting *Lee v. Burk*, 15 Ill. App. 651, 652-53 (1884)).

Frank additionally relies on *McKee v. Trisler*, 311 Ill. 536 (1924), as representative of the same premise. However, the *McKee* court's discussion of the common law existing before the Animals Running Act was based upon this court's decision in *McCormick v. Tate*, 20 Ill. 334 (1858), also cited by Frank. *McCormick* held that, although there was a common law as to fences within a parcel, "there was no general law in this state prohibiting cattle from running at large in the highway and commons." *Id.* at 337. Consequently, neither case supports Frank's argument. Moreover, reliance on case law prior to the Act's enactment, such as *McCormick*, is not particularly helpful to the case at bar.

Frank also cites *Ward v. Brown*, 64 Ill. 307, 310 (1872), asserting that the court's *dicta* that "[t]here is nothing indicating that appellants were guilty of negligence, either in the selection of the bailee or in placing the cattle in his field, or in fact the omission of any duty that devolved upon them" is inconsistent with liability under the Animals Running Act and, therefore, demonstrative of a common-law cause of action. We disagree. An *owner* being potentially liable for negligent selection of a bailee or pasture is in complete accord with both the plain language of the Animals Running Act, encompassing only owners and keepers, and with

---

[2] Estray: "a valuable domestic animal found wandering away from its home or enclosure." Webster's Third New International Dictionary 779 (2002).

subsequent appellate decisions examining bailor/bailee liability under that act. See, *e.g.*, *Moreno v. Beckwith*, 77 Ill. App. 2d 443 (1967) (the term "keeper" held to impose liability on a bailee for injuries resulting from animals that are the subject of a bailment); *Heyen v. Willis*, 94 Ill. App. 2d 290 (1968) (landowner lessor of pasture not subject to liability for estray damage appropriately attributed to "keeper" lessee).

¶ 30    Indeed, the appellate court has consistently held that "[p]rior to the enactment of the Animal[s Running] Act there was no liability in Illinois for injury or damage caused by an animal running at large. *** But in making a change [the legislature] limited the liability for damage by estrays to their owner or keeper." *Heyen*, 94 Ill. App. 2d at 296.

¶ 31    Frank's position is that the Grossens remain liable until the Animals Running Act is asserted as an affirmative defense or immunity from a common-law duty. This argument is misplaced. While the amended Animals Running Act does provide a respite for owners and keepers in the form of a negligence standard as opposed to strict liability, we have found no cases that support the existence of a common-law cause of action against nonowners or nonkeepers for estray damage, nor does Frank cite any.

¶ 32    As explained, Illinois courts have consistently recognized that liability for damage from escaped livestock stems from the Animals Running Act. The Grossens, as nonowners and nonkeepers, are thus not potentially subject to liability under common law.

¶ 33                              B. The Animals Running Act

¶ 34    The Animals Running Act affords a source of recovery for estray damage by mandating that owners and keepers of cattle use reasonable care in restraining their livestock to prevent them from running at large. Originally, the Animals Running Act imposed a strict liability standard on an owner or keeper of livestock for damages caused by unrestrained animals. As amended in 1931, the Animals Running Act was modified from the strict liability standard to provide innocent owners relief from harsh consequences where an owner acted within reason and did not know of the animal's escape. *Nevious v. Bauer*, 281 Ill. App. 3d 911, 915 (1996). Turning to the pertinent language of the Animals Running Act, it states:

> "No person or owner of livestock shall allow livestock to run at large in the State of Illinois. All owners of livestock shall provide the necessary restraints to prevent such livestock from so running at large and shall be liable in civil action for all damages occasioned by such animals running at large; Provided, that no owner or keeper of such animals shall be liable for damages in any civil suit for injury to the person or property of another caused by the running at large thereof, without the knowledge of such owner or keeper, when such owner or keeper can establish that he used reasonable care in restraining such animals from so running at large." 510 ILCS 55/1 (West 2010).

¶ 35    The text of the statute is unambiguous. It does not refer to nonowners or nonkeepers and cannot be declared to create the defense or immunity Frank asserts. Instead, the Act establishes a reasonable duty for owners and keepers to confine their livestock.

¶ 36    To reiterate, the Animals Running Act has been analyzed by the appellate court in varying iterations of possessory control of livestock, held to impose liability on a bailee, while held not to extend liability to a landowner leasing land to a third-party livestock owner. See, *e.g.*, *Moreno*, 77 Ill. App. 2d 443; *Heyen*, 94 Ill. App. 2d 290. However, under any examined scenario, the Animals Running Act has not been held to apply to nonowners or nonkeepers of

livestock. Thus, neither the plain language nor case law provides authority that the statute is an affirmative defense or immunity.

¶ 37                             II. Breach of Contract (Fence Agreement)

¶ 38        Again, "[i]f the parties are not subject to liability in tort for the plaintiff's injuries at issue in the underlying action, there is no right of contribution between those parties." *Giordano v. Morgan*, 197 Ill. App. 3d 543, 548 (1990); see also *Brockman*, 143 Ill. 2d 351. Although a breach of contract is a nontort theory, that alone is not determinative as to whether parties might also be subject to liability for contribution. *Giordano*, 197 Ill. App. 3d at 548. Thus, Frank alternately asserts that, even if the Grossens are not liable in tort to Raab under the Animals Running Act or the common law, they should be liable in tort through breach of contract.

¶ 39        As established, liability in tort governing contribution has been interpreted to mean "potential" tort liability of the party, determined at the time of the injury to the initial plaintiff. *Doyle*, 101 Ill. 2d at 10-11. At the time of Raab's injury, Frank asserted two potential bases for liability—the Animals Running Act and the Fence Act. As discussed above, a cause of action against the Grossens as nonowners and nonkeepers of cattle does not exist under the Animals Running Act.

¶ 40        The Fence Act was also presented as a potentially viable source of liability, but even if Frank had raised that issue on appeal before this court, which he did not, both the circuit court and appellate court held that, having failed to provide the Grossens with the requisite notice of a fence defect, Frank could not sustain an action under the statute.

¶ 41        Frank contends that, if the Animals Running Act operates as a defense to common law, the Grossens remain subject to potential liability for injuries occurring before they established immunity under the Act. Accordingly, Frank would therefore maintain his right to contribution. However, we find his construing the Animals Running Act as either an affirmative defense or immunity unfounded.

¶ 42        Under the Contribution Act, although no requirement exists that the bases for liability among contributors be the same, some basis for liability to the original plaintiff must exist. *Vroegh v. J&M Forklift*, 165 Ill. 2d 523, 529 (1995). Contribution is predicated upon tort, not contract, liability. *Cosey v. Metro-East Sanitary District*, 221 Ill. App. 3d 205, 209 (1991). Neither the Animals Running Act nor common law exposes nonowners or nonkeepers of livestock to tort liability for damage caused by neighbors' cattle. The Grossens, as neither owners nor keepers, are accordingly not "liable in tort" under either basis for purposes of the Contribution Act. Frank asserts that the Grossens may be held liable for contribution because Raab was an incidental third-party beneficiary of the fence agreement. We disagree. Absent potential liability in tort, a breach of contract claim does not warrant third-party contribution. See, *e.g.*, *Cosey*, 221 Ill. App. 3d at 210 (finding third-party claims brought pursuant to the Contribution Act that alleged only breach of contractual obligations were properly dismissed by trial court). Accordingly, we reject Frank's contention that his claim for contribution may be premised on the Grossens' contractual obligations under the fence agreement.

¶ 43                                      CONCLUSION

¶ 44        For the reasons discussed above, we hold that the common law does not provide a basis to hold a nonowner or nonkeeper of livestock liable in tort for damage caused by a neighbor's animals. Further, the Animals Running Act is not a source of a duty for nonowners and nonkeepers to restrain neighboring cattle.

¶ 45        Since Frank has not otherwise established potential liability in tort, breach of contract alone does not give rise to liability under the Contribution Act.

¶ 46        Appellate court judgment affirmed in part and reversed in part.

¶ 47        Circuit court judgment affirmed.